Michael Thomas RUSSELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–00–152–CR.

Court of Appeals of Texas, Waco.

April 10, 2002.

Rehearing Overruled May 1, 2002.

Stephen F. Fink, Bryan P. Neal, Thompson & Knight, L.L.P., Dallas, for appellant.

Bill Hill, Dallas County Crim. Dist. Atty., Patricia Poppoff Noble, Dallas County Asst. Dist. Atty., Dallas, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

In a pre-trial suppression motion, Michael Thomas Russell challenged the constitutionality of his search by a police officer assigned to his high school. After the court denied his suppression motion, he pleaded *nolo contendere* to possession of two ounces or less of marihuana in a drug-free zone. Pursuant to a plea recommendation, the court placed him on deferred adjudication community supervision for one year and imposed a $400 fine. Russell complains in a single issue that the court abused its discretion by denying his suppression motion.

## BACKGROUND

A parking lot attendant at Russell's high school notified the principal that he had observed three students smoking in a car in the parking lot. As the principal, Sylvia Palacios, went to the parking lot, she encountered the three students returning from the parking lot. She directed them to come to the office with her. Russell was one of the three. As the students sat in the office, Palacios noticed Russell "messing with [one of the] pocket[s]" of his cargo shorts. Palacios testified that she was concerned that he might be concealing a weapon in the pocket.

Palacios testified that baggy clothing such as that worn by Russell had been

banned at other campuses where she had worked in the past because of the ease with which weapons can be hidden. This contributed to her suspicion that Russell might have a weapon concealed in his pocket. She asked him to come into her office. When he did, she directed him to empty his pockets. He refused.

Palacios asked a police officer assigned to the high school to join them. Officer Gregory Lee entered, and she advised him of the situation. According to Palacios, she told Officer Lee "[t]hat this young man is messing with his pockets, he won't empty his pockets for me. Perhaps you can ask him to maybe help him empty them." According to Officer Lee, Palacios told him only that Russell wouldn't empty his pockets when he first entered her office. He recalled that she told him after the arrest that Russell appeared to be trying to conceal something in his pocket.

Officer Lee testified that he did not look for a bulge in Russell's pocket which might indicate the presence of a weapon because the shorts were so "big and bulky" that he was not sure that a person "would see a gun if there was one in there." "I didn't even look to notice. I just had him put his hands on the wall and started patting." According to Officer Lee, "my experience when people don't want to empty their pockets for a school administrator, they're either hiding—they're hiding something they don't want to have found and that is normally going to be a weapon, marihuana, or cigarettes." The officer testified that he conducted a pat-down search of Russell because of his concern that he might be carrying a weapon.

During the search, Officer Lee discovered a small baggie in the pocket which Palacios had observed Russell "messing with." According to the officer, "When I felt it, I immediately knew that it was a bag of marihuana from my experiences."

He explained that he immediately knew this because of "[t]he way it rolled up, the feel of the cellophane, the way the marihuana whenever you feel it how, you know, you can crush it, you know. There just wasn't any doubt in my mind when I felt it that that's why he didn't want to open his pockets."

## OUR JURISDICTION

On original submission, we dismissed this appeal for want of jurisdiction because Russell's general notice of appeal does not comply with Rule of Appellate Procedure 25.2(b)(3). *See* TEX.R.APP. P. 25.2(b)(3). In a motion for rehearing, Russell argued that this rule does not apply to misdemeanor appeals. We agreed and withdrew the prior opinion and judgment. *See Russell v. State*, 33 S.W.3d 471, 471–72 (Tex. App.-Waco 2001, order) (citing *Taylor v. State*, 916 S.W.2d 680, 684 (Tex.App.-Waco 1996, no pet.)); *accord Lenox v. State*, 56 S.W.3d 660, 664 (Tex.App.-Texarkana 2001, pet. ref'd); *see also Cooper v. State*, 45 S.W.3d 77, 81 (Tex.Crim.App.2001) (Rule 25.2(b)(3) "applies only to plea-bargained, felony cases"); *contra Acosta v. State*, 70 S.W.3d 921, 923–924 (Tex.App.-El Paso 2002, no pet. h.); *Lynch v. State*, 903 S.W.2d 115, 117–18 (Tex.App.-Fort Worth 1995, no pet.) (construing former rule 40(b)(1)); *cf. Studer v. State*, 757 S.W.2d 107, 109 n. 1 (Tex.App.-Dallas 1988) ("Arguably, a repeal of all limitations on appeals in misdemeanor cases after pleas of guilty or nolo contendere [by exclusion from former rule 40(b)(1) ] affects the substantive rights of litigants and therefore exceeds the power of the court of criminal appeals."), *aff'd on other grounds*, 799 S.W.2d 263 (Tex.Crim.App.1990).

■ Although Rule 25.2(b)(3) does not apply, the scope of Russell's plea-bargained appeal is restricted by the proviso to article 44.02 of the Code of Criminal

Procedure (which the Court of Criminal Appeals repealed as to felony appeals). *See Lenox,* 56 S.W.3d at 664; *Taylor,* 916 S.W.2d at 685. That proviso reads:

> before the defendant who has been convicted upon either his plea of guilty or plea of nolo contendere before the court and the court, upon the election of the defendant, assesses punishment and the punishment does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney may prosecute his appeal, he must have permission of the trial court, except on those matters which have been raised by written motion filed prior to trial.

Act of May 23, 1977, 65th Leg., R.S., ch. 351, § 1, 1977 Tex. Gen. Laws 940, 940–41, *repealed in part by* Act of May 27, 1985, 69th Leg., R.S., ch. 685, §§ 1, 4, 1985 Tex. Gen. Laws 2472, 2472–73, *and by* Order Adopting Amendments to Rules of Posttrial, Appellate and Review Procedure in Criminal Cases, 707 708 S.W.2d (Tex. Cases) xxxv (Tex.Crim.App.1986) (listing provisions of Code of Criminal Procedure repealed in conjunction with adoption of Rules of Appellate Procedure).

■ Thus, article 44.02 restricts the scope of an appeal from a plea-bargained misdemeanor conviction to (1) issues on which the trial court has granted permission to appeal and (2) issues raised by written pre-trial motion. *See Taylor,* 916 S.W.2d at 683. Because Rule 25.2(b)(3) does not apply to misdemeanor appeals, a defendant appealing a plea-bargained misdemeanor conviction may also raise jurisdictional issues under a general notice of appeal. *See Lyon v. State,* 872 S.W.2d 732, 736 (Tex.Crim.App.1994); *but see White v. State,* 61 S.W.3d 424, 429 (Tex. Crim.App.2001) (general notice of appeal does not properly invoke appellate court's jurisdiction to consider jurisdictional issue

in appeal from plea-bargained *felony* conviction).

Russell's appeal involves the court's denial of his written, pre-trial suppression motion. Thus, we have jurisdiction over his appeal.

## PROPRIETY OF SEARCH

Russell argues in his sole issue that the court abused its discretion by denying his suppression motion because Officer Lee did not have reasonable suspicion to conduct a pat-down search. The State responds that reasonable suspicion was not required because this was a school search.

### STANDARD OF REVIEW

■ We review a suppression ruling according to the standard articulated in *Guzman v. State. See White v. State,* 21 S.W.3d 642, 645 (Tex.App.-Waco 2000, pet. ref'd) (citing *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman,* 955 S.W.2d 85, 87 (Tex.Crim. App.1997)). *Guzman* provides a bifurcated standard of review under which we give "almost total deference to a trial court's determination of historical facts," especially when those findings are based on an evaluation of credibility and demeanor. *Id.* (quoting *Carmouche,* 10 S.W.3d at 327; *Guzman,* 955 S.W.2d at 89). We conduct a *de novo* review of the court's application of the law to these facts. *Id.* (citing *Carmouche,* 10 S.W.3d at 327; *Guzman,* 955 S.W.2d at 89).

■ When the trial court does not make findings of fact, "we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling so long as those findings are supported by the record." *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim.App.2000) (citing *Carmouche,* 10

S.W.3d at 328). We will affirm the ruling if it is "correct on any theory of law applicable to the case." *Id.* at 856 (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990)).

■■■ In a suppression hearing, the accused bears an initial burden of rebutting the presumption that the police conduct was proper. He can do so by showing that the search or seizure occurred without a warrant. If the defendant establishes a warrantless search or seizure, the burden shifts to the State to either produce a warrant or prove that the warrantless search or seizure was reasonable. *See White*, 21 S.W.3d at 645.

## PERTINENT AUTHORITIES

In *New Jersey v. T.L.O.*, the Supreme Court of the United States held that the Fourth Amendment applies to the search of a student by a school official.[1] 469 U.S. 325, 336–37, 105 S.Ct. 733, 740, 83 L.Ed.2d 720, 731 (1985). The Court observed that such a search must satisfy a "twofold inquiry" to pass constitutional muster: "first, one must consider 'whether the ... action was justified at its inception'; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* at 341, 105 S.Ct. at 742–43, 83 L.Ed.2d at 734 (quoting *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968)) (internal citation omitted).

The Court established the following general test for determining whether a school search is "reasonable" for Fourth Amendment purposes:

Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*Id.* at 341–42, 105 S.Ct. at 743, 83 L.Ed.2d at 734–35 (footnotes omitted).

The Court expressly left unanswered the issue of what standard should apply to a school search in which a law enforcement official is involved. *Id.* at 341 n. 7, 105 S.Ct. at 743 n. 7, 83 L.Ed.2d at 735 n. 7.

Nevertheless, other courts have established a three-part inquiry to follow when a law enforcement official is involved in a school search. According to our research, the Supreme Court of Illinois was the first to do so. In *People v. Dilworth*, that court surveyed the decisions pertinent to this issue and drew the following conclusions:

Decisions filed after *T.L.O.* that involve police officers in school settings can generally be grouped into three categories: (1) those where school officials initiate a search or where police involvement is minimal, (2) those involving school police or liaison officers acting on their own authority, and (3) those where outside police officers initiate a search. Where school officials initiate the search or police involvement is minimal, most courts have held that the reasonable suspicion test obtains. The same is true in cases involving school police or liaison

---

1. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment was made applicable to the States via the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961); *Hernandez v. State*, 60 S.W.3d 106, 106 (Tex.Crim.App.2001).

officers acting on their own authority. However, where outside police officers initiate a search, or where school officials act at the behest of law enforcement agencies, the probable cause[2] standard has been applied.

169 Ill.2d 195, 206–07, 661 N.E.2d 310, 317, 214 Ill.Dec. 456 (1996) (citations omitted) (footnote added).

Several other states have adopted this approach. *See State v. D.S.*, 685 So.2d 41, 43 (Fla.Dist.Ct.App.1996); *In re Josue T.*, 128 N.M. 56, 61–62, 989 P.2d 431, 436–37 (N.M.Ct.App.1999); *In re D.D.*, 146 N.C.App. 309, 318, 554 S.E.2d 346, 352–53 (2001); *Commonwealth v. J.B.*, 719 A.2d 1058, 1065 (Pa.Super.Ct.1998); *In re Angelia D.B.*, 211 Wis.2d 140, 151–52, 564 N.W.2d 682, 687 (1997).

Although we have found no Texas cases applying this analysis to school searches involving law enforcement officials, our research has disclosed two reported cases in which Texas appellate courts at least implicitly followed the rationale of *Dilworth*. *See Coronado v. State*, 835 S.W.2d 636, 637–41 (Tex.Crim.App.1992) (*T.L.O.* standard applied where assistant principal and sheriff's deputy assigned to school jointly searched student's locker and car); *Wilcher v. State*, 876 S.W.2d 466, 467–69 (Tex. App.-El Paso 1994, pet. ref'd) (*T.L.O.* standard applied where Houston I.S.D. police officer directed student to empty his pockets). In our view, both of these decisions involved law enforcement officials who fit in the second *Dilworth* category. Thus, under *Dilworth* the search conducted by these officials would be governed by the *T.L.O.* standard. *See Dilworth*, 169 Ill.2d at 207, 214 Ill.Dec. 456, 661 N.E.2d at 317.

We believe the *Dilworth* analysis properly applies the "twofold inquiry" of *Terry* to school searches involving law enforcement officials. *See T.L.O.*, 469 U.S. at 341, 105 S.Ct. at 742–43, 83 L.Ed.2d at 734. Accordingly, we follow it here.

## ANALYSIS

■ The Richardson Police Department assigned Officer Lee to Russell's ·high school. Thus, he fit in the second *Dilworth* category. *See Dilworth*, 169 Ill.2d at 206–07, 214 Ill.Dec. 456, 661 N.E.2d at 317. Viewing the evidence in the light most favorable to the court's suppression ruling, Officer Lee possessed the following information when he searched Russell:

- a school security officer had observed Russell and two others smoking in the parking lot;[3]
- Russell was wearing baggy shorts;
- Palacios had seen him "messing with" a pocket in these shorts;
- Russell had refused to empty his pocket for Palacios; and
- according to Officer Lee's experience, students who refuse to empty their pockets for a school administrator are concealing something they don't want to disclose, usually "a weapon, marihuana, or cigarettes."

Based on these facts, we conclude that Officer Lee had "reasonable grounds for suspecting that the search [would] turn up evidence that [Russell] ha[d] violated or [wa]s violating either the law or the rules of the school." *See T.L.O.*, 469 U.S. at 342,

**2.** Although the Illinois court spoke in terms of "probable cause" with respect to this third category, we do not doubt that a law enforcement official in this category could temporarily detain a student based on "reasonable suspicion" as recognized in *Terry v. Ohio.* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968).

**3.** Officer Lee had monitored the radio conversation in which the security officer relayed this information to Palacios.

105 S.Ct. at 743, 83 L.Ed.2d at 735; *see also Coronado,* 835 S.W.2d at 641 (assistant principal's suspicion that student was skipping school justified intervention and pat-down search of student "for safety reasons"); *Wilcher,* 876 S.W.2d at 469 (officer's suspicion based on previous-day's report that student was carrying weapon justified officer's directive that student empty his pockets); *Coffman v. State,* 782 S.W.2d 249, 250–51 (Tex.App.-Houston [14th Dist.] 1989, no pet.) (student's "clutching" of book bag and placing it behind him and his "excited and aggressive" posture in response to assistant principal's questions, his "prior propensity to get into trouble, coupled with the fact that he was in the hall without a pass and returning from an area where thefts had previously occurred" justified search of bag). Specifically, the facts known to Officer Lee gave him reasonable grounds to believe that Russell was in possession of a weapon or other contraband. Thus, the pat-down search of Russell was "justified at its inception." *See T.L.O.,* 469 U.S. at 341, 105 S.Ct. at 743, 83 L.Ed.2d at 734 (quoting *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905).

■ Officer Lee was concerned that Russell might have a weapon. Although the focus seemed to be on Russell's pocket, we agree with the El Paso Court that it was "more efficacious from a law enforcement standpoint to initially pat [Russell] down" for safety reasons. *See Wilcher,* 876 S.W.2d at 469. Nevertheless, Officer Lee did not have to stop there. Under the facts of this case, we hold that a search of Russell's pocket was "reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *See T.L.O.,* 469 U.S. at 342, 105 S.Ct. at 743, 83 L.Ed.2d at 735; *see also Wilcher,* 876 S.W.2d at 469 (officer's

directive that student empty his pockets "reasonably related in scope to the circumstances which justified the initial interference"); *Coffman,* 782 S.W.2d at 251 (search of book bag "reasonable and not excessively intrusive"); *cf. Coronado,* 835 S.W.2d at 641 (assistant principal's suspicion that student skipping school did not warrant subsequent searches of his locker and car after initial pat-down revealed no contraband or weapon).

For these reasons, we hold that Officer Lee's search of Russell did not violate the Fourth Amendment's prohibition of "unreasonable searches and seizures." *See* U.S. CONST. amend. IV. Thus, we conclude that Russell's sole issue is without merit.

We affirm the judgment.