# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00516-CV

**In the Matter of O.E.**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. J-22,173, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

O.E. was adjudicated delinquent based on his possession of marihuana in a drug-free zone. *See* Tex. Health & Safety Code Ann. § 481.121 (West 2003). After the trial court denied appellant's motion to suppress evidence, appellant waived trial by jury, pled true to the allegations in the petition, was adjudicated delinquent by the trial court, and placed on probation for a six-month period. In one issue on appeal, appellant contends that the trial court erred in denying his motion to suppress. We will affirm the trial court's judgment.

### Factual and Procedural Background

Val Barnes, a seven-year veteran of the Austin Independent School District Police Department, was the only witness at the hearing on the motion to suppress.[1] Barnes worked at the

---

[1] The Austin Independent School District has its own police force; Barnes was not an officer from the Austin Police Department assigned to patrol the school. The AISD police force provides security, assists school administrators in carrying out security, and serves in a law enforcement capacity.

Alternative Learning Center (the "Center"). Students from throughout the district are placed in the Center for various disciplinary violations, including drug-related offenses and gang-related issues; only students with such violations attend the Center. The Center has a uniform security policy: every day, all students entering the Center must pass through a metal detector, be patted down, empty their pockets onto a tray, remove their shoes, and place those shoes on a table for inspection. If no contraband is found, the student is allowed to retrieve the belongings and go to class. Before attending the Center, every student and parent is required to attend an orientation session outlining the Center's rules and regulations, including the search policy. The policy had been in place during the entire seven years that Barnes worked at the Center.

On the morning of May 2, 2002, appellant emptied his pockets, went through the metal detector, removed his shoes, and placed them on the table. Officer Barnes saw a white tissue inside the right shoe, removed the tissue, and found a marihuana cigarette. This juvenile proceeding ensued.

## Discussion

*Standard of Review*

We review the ruling on a motion to suppress in a juvenile case using an abuse of discretion standard of review. *See In re R. J. H.*, 79 S.W.3d 1, 6 (Tex. 2002) (adopting standard).[2]

---

[2] The Texas Supreme Court noted that the Texas Court of Criminal Appeals used an abuse of discretion standard but "has not said whether that standard of review is different from the standard under federal law." *In re R. J. H.*, 79 S.W.3d 1, 6 (Tex. 2002). In adopting the criminal standard for juvenile cases, the Texas Supreme Court said that "for purposes of this case at least we take [that standard] to be essentially identical to the federal standard." *Id*. Although appellant asserts that the challenged evidence was secured "in violation of Appellant's federal and state constitutional rights,"

2

An appellate court reviewing such a ruling defers to the trial court's findings of historical fact but determines *de novo* the court's application of the law to those facts. *Id.*; *see State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). The reviewing court may not disturb supported findings absent an abuse of discretion. *See Etheridge v. State*, 903 S.W.2d 1, 15 (Tex. Crim. App. 1994).

Although the court in this case made detailed findings, to the extent that the juvenile court's findings might not sufficiently address all factual issues, the appellate court examines the record in the light most favorable to the trial court's ruling. *See State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). Viewing the evidence in that light, the reviewing court may infer all findings necessary to support the juvenile court's ruling. The court must defer to those findings and must sustain that lower court's ruling if the record reasonably supports the ruling and the ruling is correct on any theory of law applicable to the case. *See Ross*, 32 S.W.2d at 855-56.

### Administrative Searches

The uncontradicted evidence in this case shows this search was not targeted at a particular person based on a tip, suspicious behavior, or any other form of individual suspicion.[3]

he has not provided any citation, analysis, or argument specifically directed at the applicability of the Texas Constitution. *See Heitman v. State,* 815 S.W.2d 681, 690-91 n.23 (Tex. Crim. App. 1990) (brief asserting right under Texas constitution inadequate if fails to provide argument or authority in support of assertion). For purposes of this case, we will assume the rights under the United States and Texas Constitutions are essentially identical. *See R. J. H.*, 79 S.W.3d at 6.

[3] *Cf., e.g.*, *In re A.T.H.*, 106 S.W.3d 338, 341-42 (Tex. App.—Austin 2003, no pet.) (officer had neither reasonable suspicion nor probable cause to conduct pat-down search based on uncorroborated anonymous tip concerning "juveniles" smoking marihuana; fact that description of individual as "black male wearing Dion Sanders jersey" matched person searched insufficient corroboration standing alone).

3

Rather, appellant was searched as part of a daily routine during which all students entering the Center were searched. Thus, this search falls within the general category of "administrative searches." *See, e.g.*, *Camara v. Municipal Court*, 387 U.S. 523, 537 (1967).

An administrative search is conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of a crime. *See Gibson v. State*, 921 S.W.2d 747, 757-62 (Tex. App.—El Paso 1996, pet. denied) (metal detector at courthouse entrance). As such, it is may be permissible under the Fourth Amendment although not supported by a demonstration of probable cause directed to a particular place or person to be searched. *Gibson*, 747 S.W.2d at 758 (citing *United States v. Davis*, 482 F.2d 893, 908 (9th cir. 1973)). "Designed to prevent the occurrence of a dangerous event, an administrative search is aimed at a group or class of people rather than a particular person." *Id.* (quoting *People v. Dukes*, 151 Misc.2d 295, 580 N.Y.S.2d 850, 851-52 (City Crim. Ct. 1992)). An administrative search will be upheld as reasonable when the intrusion involved is no greater than necessary to satisfy the governmental interest underlying the need for the search. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 664-65 (1995) (random drug testing of athletes); *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 455 (1990) (random sobriety checkpoints); *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 633 (1989) (post-accident drug testing of railroad employees); *United States v. Martinez-Fuerte*, 428 U.S. 543, 545 (1976) (vehicle stops at fixed checkpoints to search for illegal aliens); *Camara v. Municipal Court*, 387 U.S. 523, 537 (1967) (searches of residences by housing code inspectors); *Gibson*, 921 S.W.2d at 765 (magnetometer search at courthouse entrance).

*School Searches*

The Fourth Amendment applies to searches of students by school authorities. *See New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985). However, "[a] student's privacy interest is limited in a public school environment where the State is responsible for maintaining discipline, health, and safety . . . . Securing order in the school environment sometimes requires that students be subjected to greater controls than those appropriate for adults." *Board of Education v. Earls*, 536 U.S. 822, 830-31 (2002); *Marble Falls Indep. Sch. Dist. v. Shell*, No. 03-02-00652-CV, 2003 Tex. App. LEXIS 2845, at *16 (Tex. App.—Austin April 3, 2003, no pet.) (memorandum opinion) (citing *Earls*, 536 U.S. at 830-31). The legality of a search of a student depends on the reasonableness, under all the circumstances, of the search. *T.L.O.*, 469 U.S. at 341.

Administrative searches at schools have been upheld in various circumstances. Random drug testing of athletes without any individualized suspicion was upheld in *Vernonia*, 515 U.S. at 664-65. Although the court recognized that the drug testing at issue was inherently intrusive, it concluded that the privacy invasion was justified by the important government interest in reducing drug abuse by student athletes. *Earls*, essentially following *Vernonia*, approved random drug testing for all students participating in extracurricular activities. *Earls*, 536 U.S. at 838.

In *In re F.B.*, 658 A.2d 1378 (Pa. Super. Ct. 1995), students entering a public high school were routinely required to empty their pockets, and surrender their jackets and any bags. While the belongings were searched, the students were scanned with a metal detector. If no drugs or weapons were found, the student was allowed to retrieve his belongings. Signs were posted notifying students of this procedure. *Id.* at 1380. The defendant was found to have engaged in

5

delinquent conduct by possessing a weapon on school property, a knife found when he emptied his pockets. In upholding the search, the court held that the search of the student during a student-wide search by school officials was reasonable even though the school officials had no individualized suspicion that the student was armed. *Id.* at 1379-80. The court concluded that the search was justified at its inception because of the high rate of violence in the Philadelphia public schools. Further, "it was reasonable to search all students prior to entering the school because there is no way to know which students are carrying weapons." *Id.* at 1382. A similar search procedure was upheld in *In re S.S.*, 680 A.2d 1172 (Pa. Super. Ct. 1996). An important factor in the court's analysis was that a uniform procedure was followed when each student was searched. "This uniformity served as a safeguard, assuring that a student's expectation of privacy was not subjected to officials' discretion." *Id.* at 1176.

*Analysis of this Search*

In analyzing an administrative search, we weigh the intrusion involved against the governmental interest underlying the need for the search to determine its reasonableness.[4] *See, e.g.*,

---

[4] Because conducting these searches was a routine part of his duties as an Austin Independent School District police officer, and because this search is an administrative search, and not one conducted pursuant to any particularized suspicion, we do not think concerns about the status of the person performing the search are implicated. *Cf. Russell v. State*, 74 S.W.3d 887, 891-92 (Tex. App.—Waco 2002, pet. ref'd) (applying three-part test to determine whether reasonable suspicion or probable cause test should apply depending on status of person conducting search as school official, school police or liaison officials, or outside police officers; search involved individual suspicion).

6

*Vernonia*, 515 U.S. at 664-65. In that weighing process, we keep in mind the diminished expectation of a student's privacy in a school setting and the State's compelling interest in maintaining a safe and disciplined environment. *See* Tex. Educ. Code Ann. § 4.001 (West 1996) (one of objectives of public education is that "[s]chool campuses will maintain a safe and disciplined environment conducive to student learning."). In this case, Barnes' testimony made it clear that the search had as its main objective the security of the school. During the seven years Barnes worked at the Center, contraband items such as knives, razor blades, marihuana, and cocaine were regularly found. More than one court has noted the increasing violence in public schools. *See T.L.O.*, 469 U.S. at 339 (drug use and violent crime in the schools have become major social problems); *People v. Pruitt*, 662 N.E. 2d 540, 546 (Ill. App. Ct. 1996) ("violence and the threat of violence are present in the public schools[;] [s]choolchildren are harming each other with regularity"). All of the students attending the Center had been removed from other campuses for disciplinary problems, increasing the difficulty of the State's task to maintain order and provide a safe environment conducive to learning. *Cf. In re F. B.*, 658 A.2d at 1378 (all students entering school searched; no indication campus was disciplinary school facility). The search procedure was justified at its inception as a method of furthering the State's interest in maintaining a safe and disciplined learning environment in a setting at high risk for drugs and violence.

We also must evaluate the level of intrusion on the individual's privacy. In general, although students in public schools have an expectation of privacy in their persons and belongings, because of the state's custodial and tutorial authority over the students, public school students are

7

subject to a greater degree of control and administrative supervision than adults. *Earls*, 536 U.S. at 830-31.

In this case, appellant and his parents were notified in advance of the school's daily screening process. Such a notice has been held to reduce the expectation of privacy. *See Shoemaker v. State*, 971 S.W.2d 178, 182 (Tex. App.—Beaumont 1998, no pet.) (student had no reasonable expectation of privacy in locker when school authorities had keys to all lockers and student handbook warned that lockers could be searched at any time there was "reasonable cause" to do so).

Emptying pockets and searching backpacks previously has been upheld in other school searches; the level of intrusion into any given individual's privacy is less than that approved in the cases allowing random drug testing. Removing one's shoes for inspection has been deemed "minimally intrusive" in at least one case. *See Thompson v. Carthage Sch. Dist.*, 87 F.3d 979, 981-83 (8th Cir. 1996) (suspicion that weapons brought to school, all male students asked to take off shoes and socks and empty pockets; "generalized but minimally intrusive search for dangerous weapons was constitutionally reasonable").

The school district has developed a uniform procedure to search students. Such uniformity serves as a safeguard against an abuse of discretion on the part of school officials in making a determination of which persons will be searched. *See In re S.S.*, 680 A.2d at 1176. It is tailored to meet the needs of a school setting at higher risk than usual for disciplinary problems involving weapons and drugs. The intrusion on the students more limited expectation of privacy is reasonable. Accordingly, the search was an administrative search of the sort permissible under the Fourth Amendment. *See Earls*, 536 U.S. at 838; *Vernonia*, 515 U.S. at 664-65.

8

## Conclusion

We have overruled appellant's only issue.  Accordingly, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   November 13, 2003

9