

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00045-CR

_____

JAMES SENTRELL CHISM, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 14,970

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

After unsuccessfully moving to suppress the physical evidence against him, James Sentrell Chism pled guilty to possession of a controlled substance, less than one gram of cocaine, and was sentenced to two years' confinement in a state jail facility. *See* Tex. Health & Safety Code Ann. § 481.115 (Vernon 2003). Chism contends the trial court erred by denying his motion to suppress.

The hearing on the motion to suppress revealed that former Gilmer Police Officer James Griswold responded to a report of a man panhandling[1] at a local convenience store. After finding a man who met the description provided, talking to him, patting him down, asking questions, and seeing a prescription pill bottle in his pants pocket despite his efforts to conceal it, Griswold ultimately seized the pill bottle, which contained a small plastic bag containing white residue later discovered to be cocaine. Chism challenges various stages of his interaction with Griswold and maintains the trial court should have granted his motion to suppress the physical evidence obtained during that interaction. We agree with Chism and outline the events in question in more detail below.

## I. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *See Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We review de novo the legal

---

[1]"[P]anhandle" – "to accost passers-by on the street and and beg from them. . . . . so called from the resemblance of the extended arm to a panhandle." Random House Webster's Unabridged Dictionary 1402 (2nd ed. 2001).

2

determinations of detention, reasonable suspicion, and probable cause under the Fourth Amendment while granting great deference to a trial court's factual findings. *State v. Sheppard*, 271 S.W.3d 281, 286–87 (Tex. Crim. App. 2008). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

"Beginning with the officer's initial intrusion, we evaluate the reasonableness of each incremental level of intrusion, based on the information possessed by the officer at that time." *Citizen v. State*, 39 S.W.3d 367, 370 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Here, we will examine the initial detention, the pat down, the viewing of the pill bottle, and the seizure of the pill bottle.

## II.    THE INVESTIGATIVE DETENTION

At about 9:30 a.m. on a Sunday morning, a call came in to the Gilmer Police Department for service to the Top Stop convenience store concerning a black man panhandling. The store clerk reporting the incident described the suspect as a black male wearing blue jeans, a white tank top, and a black baseball cap and having left the scene on foot traveling north on Highway 271.[2]

Griswold went to the area to look for the individual. He shortly found Chism, walking along Highway 271, and made contact with Chism at that time. Griswold stepped out of his vehicle and

---

[2]Another officer would later go to the store to get a further description and information. But at the time Griswold was dispatched, the extent of the information was as described.

"asked [Chism] to step over to [his] vehicle." Griswold testified that Chism "complied" with his "instructions." Griswold advised Chism that he was investigating a report of panhandling.

In response to the State's questioning, Griswold testified that when he stopped to talk to Chism, he had reasonable good faith to believe that the individual was the individual who had been reported as panhandling. Griswold would later concede the city ordinance prohibiting panhandling only applied to such activity between the hours of sunset and sunrise, a limitation of which Griswold was unaware at the time of his encounter with Chism. Though Chism had not committed a technical violation of the city ordinance prohibiting panhandling, Griswold maintained that he had a good-faith reasonable belief that a crime had occurred.

### A. When and for What Purpose May an Officer Perform an Investigatory Detention

When an officer has a reasonable suspicion based on articulable facts that criminal activity is afoot and a certain person is connected with the activity, the officer may make an investigative stop of that person even though grounds for arrest do not exist. *Terry v. Ohio*, 392 U.S. 1, 20–29 (1968); *Sheppard*, 271 S.W.3d at 287. The articulable facts "must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime." *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989).

These facts must amount to more than a mere inarticulable hunch or suspicion. *Williams v. State*, 621 S.W.2d 609, 612 (Tex. Crim. App. 1981). "The behavior of the suspect need not suggest

4

the commission of a particular offense; any sufficiently suspicious criminal activity may justify a stop." *Hill v. State*, 951 S.W.2d 244, 247 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *see Jenkins v. State*, No. 06-08-00158-CR, 2009 Tex. App. LEXIS 304, at *4–5 (Tex. App.—Texarkana Jan. 16, 2009, no pet.) (mem. op., not designated for publication).  Any investigative detention that is not based on reasonable suspicion is unreasonable and violates the Fourth Amendment.  *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

### B.      Reviewing the Validity of an Investigative Detention

The burden is on the State to elicit testimony showing sufficient facts to create a reasonable suspicion.  *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).  Whether reasonable suspicion exists is determined by considering the facts known to the officer at the moment of detention.  *Davis*, 947 S.W.2d at 243.  A determination of reasonable suspicion must be based on common-sense judgments and inferences about human behavior.  *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

Griswold testified he stopped Chism, who met the description provided, to investigate the report of panhandling.  That the city ordinance really only prohibited panhandling between the hours of sunset and sunrise does not invalidate the investigative detention of Chism during daylight hours. His behavior, though perhaps not a technical violation of the city ordinance, was sufficiently suspicious to justify an investigative detention.  Assuming that the initial encounter between

5

Griswold and Chism was an investigatory detention implicating Fourth Amendment protections,[3] we conclude the initial investigative detention was sufficiently justified by reasonable suspicion. That said, we move on to the next stage of the interaction, the pat down, with the understanding that Griswold had lawfully detained Chism for investigative purposes.

## III.    THE PAT DOWN

After Griswold detained Chism and directed him to step over to the police car, Chism offered no resistance to the conversation and did not appear to be reluctant to speak with Griswold. There had been no report to Griswold that Chism had acted in a threatening manner. Griswold then asked Chism to identify himself and checked Chism for weapons for officer safety. Griswold had not seen anything that made it appear that Chism might have a weapon and had not detected any movements

---

[3]Not every encounter between police and citizens implicates the Fourth Amendment. *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). A mere request for an individual to stop or submit to a search does not necessarily constitute a "stop," and such a request need not be justified by reasonable suspicion. *See id.* Only if the officer conveyed a message that compliance was required has a consensual encounter become a detention. In determining whether the officer conveyed such a message to the suspect, we consider the following nonexhaustive factors: (1) whether the officer was in uniform; (2) whether the officer exhibited a weapon; (3) the number of officers present; (4) whether the officer suggested that he or she would get a warrant if the defendant did not comply; (5) whether the officer told the defendant he or she believed the defendant was carrying drugs; and (6) whether the officer told the defendant that compliance was or was not required. *Id.* An investigative detention occurs when an individual is encountered by a police officer, yields to the officer's display of authority, and is temporarily detained for purposes of an investigation. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). A person "yields to an officer's display of authority" when a reasonable person would not feel free to continue walking or otherwise terminate the encounter. *Florida v. Bostick*, 501 U.S. 429, 436 (1991); *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999).

that would suggest Chism had or was about to use a weapon. Chism did not exhibit any behavior that would suggest that he was about to flee or otherwise pose a threat to Griswold.

Griswold testified that it was his "normal practice" to always search for weapons: "Every single time I make contact with a suspect[,] I check for weapons for officer safety." He offered the following explanation as the objective reasonable basis for conducting his "normal practice" weapon search: "I'm making a contact with a person that I don't know who people are accusing of an offense." He confirmed that Chism made no threat to him at all. Griswold also confirmed that Chism complied with his directions when he announced that he would be checking Chism for weapons.

The record suggests that Chism told Griswold that he had awakened in someone's yard and did not know how he had gotten there and was walking back toward the Lake O' the Pines. Griswold explained that he believed Chism possessed narcotics[4] because of Chism's "disoriented state," the fact that Chism had slept in a vehicle, and "just the factors of the situation."

When prompted by the State, Griswold testified the transient population in Gilmer usually have weapons on them; Griswold has found knives, screwdrivers, and handguns. He also testified that in his experience, a number of the transient population in Gilmer abuse narcotics and often have needles and such on their persons. Though directly contradictory to his earlier testimony, Griswold

_____

[4]As we will explore later, we pause here to note that a weapons pat down is not intended to allow an officer to search for evidence of a crime. *See Wood v. State*, 515 S.W.2d 300, 306 (Tex. Crim. App. 1974).

7

then testified he was worried Chism might stab him with one of these items. Griswold's pat down of Chism, however, did not reveal any weapons.

### A. When an Officer Can Perform a Pat Down

The Fourth Amendment prohibits unreasonable searches and seizures. *O'Hara v. State*, 27 S.W.3d 548, 550 (Tex. Crim. App. 2000). Searches conducted without a warrant are unreasonable per se under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. *Id.* One exception to the warrant requirement occurs when an officer is justified in believing that an individual is armed and presently dangerous. *Id.* In that situation, the officer may conduct a pat-down search to determine whether the person is carrying a weapon. *Id.* It would be unreasonable to deny a police officer the right to neutralize the threat of physical harm. *Id.*

*Terry* does not authorize a frisk for weapons in all confrontational encounters. *Maryland v. Buie*, 494 U.S. 325, 333–34 (1990). A police officer who has lawfully detained a person for investigation may conduct a protective search of the detainee's outer clothing for weapons if the officer has a reasonable belief based on specific, articulable facts that the person is armed and dangerous. *See Terry*, 392 U.S. at 27; *Sheppard*, 271 S.W.3d at 287; *Sikes v. State*, 981 S.W.2d 490, 492 (Tex. App.—Austin 1998, no pet.). While an officer need not be absolutely certain that the person he or she pats down is armed and dangerous, the specific facts supporting the pat down must amount to more than a mere hunch or suspicion. *Terry*, 392 U.S. at 27; *Sikes*, 981 S.W.2d at 492.

8

An officer need only be able to "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21; *O'Hara*, 27 S.W.3d at 550–51. The United States Supreme Court has been "careful to maintain" the "narrow scope" of the pat-down exception. *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979); *O'Hara*, 27 S.W.3d at 551.

As noted, the purpose of a limited search after an investigatory stop is *not* to discover evidence of crime, but to allow the officer to pursue his or her investigation without fear of violence. *See Wood*, 515 S.W.2d at 306; *see also Guevara v. State*, 6 S.W.3d 759, 764 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (pat down unreasonable despite reasonable suspicion that defendant possessed cocaine because detention occurred in nonthreatening circumstances, no evidence existed that defendant was armed, and defendant was cooperative).

**B.        What Situations Will Not Justify a Pat Down**

Pat-down searches conducted solely as a matter of routine or procedure are not justified. *See In re A.T.H.*, 106 S.W.3d 338, 347 (Tex. App.—Austin 2003, no pet.); *Sikes*, 981 S.W.2d at 494. Constitutional protections against unreasonable searches cannot be whittled away by police regulations or standard operating procedure. *Salazar v. State*, 893 S.W.2d 138, 143 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd, untimely filed) (citing *Benavides v. State*, 600 S.W.2d 809, 812 (Tex. Crim. App. [Panel Op.] 1980)).

To illustrate circumstances that do not justify a pat down, we first point to *A.T.H.*, 106 S.W.3d at 347. The officer in *A.T.H.* testified he conducted a pat down only for routine safety concerns. *Id.* The Austin court noted that such testimony does not automatically invalidate the pat down and went on to perform the proper inquiry: did the record show a reasonably prudent officer would believe that the officer or others might be at risk, thus justifying a pat down? *Id.*

The record showed that the encounter occurred in a high school parking lot in broad daylight during a school day. *Id.* The officer did not testify that A.T.H. appeared dangerous or made any erratic, suspicious, furtive, or threatening gestures, acted reluctant to speak to the officer, "or was anything other than cooperative when asked his name and birthday." *Id.* There was no evidence that A.T.H. was dressed in such a way as to conceal a weapon. *See id.* (citing *Russell v. State*, 74 S.W.3d 887, 892 (Tex. App.—Waco 2002, pet. ref'd)). The court concluded the officer did not articulate and the totality of the circumstances did not demonstrate facts to indicate he was justified in conducting a pat down for weapons. *Id.*

The court rejected the State's contention that the anonymous tip that indicated A.T.H. was one of the teens smoking marihuana gave the officer reasonable suspicion to conduct the pat down; the court pointed out that the tip related only to alleged drug use, whereas the officer testified he was conducting a routine pat down for weapons. *Id.* The court emphasized the weapons pat-down exception "is very narrowly drawn" and, even viewing the evidence in the light most favorable to

the ruling, went on to conclude that the record did not support a finding that a reasonably prudent officer would believe that A.T.H. might be armed. *Id.*

The pat down in *Sikes* was similarly unjustified when officers stopped the vehicle in which Sikes was a passenger after the officer witnessed what he believed to be burglary of a vehicle.[5] 981 S.W.2d at 491. Sikes was apparently intoxicated and admitted he had been drinking and taking over-the-counter medicine. *Id.* The driver, Sikes' brother, eventually consented to a search of the vehicle. *Id.* Another officer arrived and supervised the two brothers as the first officer searched the vehicle. *Id.* The second, supervising officer testified he repeatedly told them to keep their hands out of their pockets. *Id.* He then asked them to empty their pockets; both complied, revealing no weapons and no contraband. Even after their pockets were emptied, he performed pat downs of both brothers, for "officer safety." *Id.* He also testified, "Well, personally[,] I do a pat down search whenever we search a vehicle to make sure that they might not pull out something while we're searching the vehicle." *Id.*

As he performed the pat down on Sikes, the officer was able to see into the pocket of Sikes' baggy shorts and saw a plastic sandwich bag. Based on his training and experience and given Sikes' apparent intoxication, the officer suspected that the bag contained marihuana and reached into the pocket and seized the bag. *Id.* at 492. Sikes did not challenge the investigative detention. He

---

[5]It was later determined that neither brother had committed the offense of burglary of a vehicle; Mark Sikes, appellant's brother and the driver, was merely putting a note in his girlfriend's vehicle. *See Sikes*, 981 S.W.2d at 491.

challenged only the justification for the pat down, contending that the pat down was an unconstitutional search. *Id.* The Austin court agreed.

The State cited the fact that both brothers kept putting their hands in their pockets and pointed to *Worthey v. State*, 805 S.W.2d 435 (Tex. Crim. App. 1991), for support that such behavior was sufficient to cause a reasonable concern for officer safety. The court rejected that contention, distinguishing the facts in *Worthey*. *Sikes*, 981 S.W.2d at 493. In *Worthey*, the encounter occurred at 3:00 a.m. when the appellant arrived at a house being searched pursuant to a warrant and was told to keep her hands where they could be seen. 805 S.W.2d at 437. She immediately clutched her purse and turned it away from the officer, who believed there might be a weapon in the purse, took it, frisked it, and found methamphetamine. *Id.* The *Sikes* court emphasized that the time of day was a noteworthy distinction, as were "other circumstances" present in *Worthey*. 981 S.W.2d at 493.

The Austin court pointed out that the encounter in *Sikes* took place mid-afternoon and that there was no evidence that Sikes had been "anything other than cooperative." *Id.* Although Sikes appeared to be intoxicated, neither officer testified he believed Sikes might be a danger to himself or others. *Id.* Neither officer testified they saw any furtive gestures or observed any suspicious bulges that might be concealed weapons. *Id.* The court also emphasized that the officer performing the pat down testified he performed this pat down as a matter of routine. *Id.* The court also distinguished several other cases, concluding that in *Sikes*, there were no objective, articulable facts in the record to support the officer's professed concern for his safety. *Id.* at 493–94. Even viewing

12

the evidence in the light most favorable to the court's ruling, the *Sikes* court concluded that the State failed to prove that the pat-down search was constitutionally justified. *Id.* at 494.

In *Guevara*, the investigative detention was justified by an anonymous tip regarding a drug transaction. 6 S.W.3d at 762. The "weapons" pat down, which yielded the small amount of cocaine expected, however, was not justified. *Id.* at 764. The court pointed out that the detention occurred in the middle of the day in a public parking area not designated as a high crime area. *Id.* There was no information from the tipster that Guevara was to be considered armed and dangerous. *Id.* Guevara was cooperative and did nothing furtive or suspicious that might have indicated a threat to the officer. *Id.* The court also pointed out that in light of the anonymous tip, the officer knew that at best, the transaction would involve only a small amount of cocaine. *Id.* The officer "acquiesced" to State questioning, explaining that he patted down Guevara for weapons and contraband, but never specified why he believed the situation was unsafe. *Id.* It was obvious to the *Guevara* court that the officer was searching for the cocaine mentioned in the tip; he testified that he was. *Id.* The court rejected the State's argument that the violent nature of narcotics transactions made it reasonable to suspect that the appellant might have a weapon: "These reasons are merely the 'unparticularized' suspicions or 'hunches' which *Terry* held are not enough to justify a self-protective search." *Id.*

### C.    Review of the Validity of a Pat Down

So, it is clear that police regulations or routines are not sufficient to justify a pat-down search. *See O'Hara*, 27 S.W.3d at 553; *Sikes*, 981 S.W.2d at 494. However, not every pat-down search

13

performed as a matter of routine will be overturned automatically. *O'Hara*, 27 S.W.3d at 554. Even

if an officer conducts a pat down simply as a matter of routine, the objective facts available to the

officer may still justify the pat down. *Id.* Whether a Fourth Amendment violation has occurred

"turns on an objective assessment of the officer's actions in light of the facts and circumstances

confronting him at the time, and not on the officer's actual state of mind at the time the challenged

action was taken." *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985); *Sheppard*, 271 S.W.3d at 288;

*O'Hara*, 27 S.W.3d at 551; *Davis*, 947 S.W.2d at 242–43. In other words, an officer's testimony that

he or she was not afraid of the suspect does not automatically invalidate a pat-down search for

weapons.[6] *O'Hara*, 27 S.W.3d at 551.

Instead, we must remain focused on the proper question by asking whether, under an

objective analysis, a reasonably cautious person would be justified in making a precautionary search

for weapons. *See Terry*, 392 U.S. at 27; *O'Hara*, 27 S.W.3d at 551. The officer need not be

absolutely certain that the individual is armed. Reasonable inferences that the officer is entitled to

draw by analyzing the facts in light of his or her experience may be all that is necessary to

characterize the officer's actions as reasonable. *See Terry*, 392 U.S. at 27.

---

[6]As the Fifth Circuit Court of Appeals has observed, there is "no legal requirement that a policeman must feel 'scared' by the threat of danger" because "some foolhardy policemen will never admit fear." *O'Hara*, 27 S.W.3d at 551 (quoting *United States v. Tharpe*, 536 F.2d 1098, 1101 (5th Cir. 1976), *overruled in part on other grounds by United States v. Causey*, 834 F.2d 1179 (5th Cir. 1987)).

14

A defendant alleging a Fourth Amendment violation bears the burden of producing some evidence to rebut the presumption of proper police conduct and "meets his initial burden of proof by establishing that a search or seizure occurred without a warrant." *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). The burden then shifts to the State to prove that the search or seizure was nonetheless reasonable under the totality of the circumstances. *See id.* at 9–10. In determining whether the State carried its burden, we must give great deference to the trial court's determination of the historical facts. *See Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005). We are not at liberty to disturb any finding supported by the record. *Arnold v. State*, 873 S.W.2d 27, 34 (Tex. Crim. App. 1993).

### D. Analysis and Conclusion

Here, Griswold legally detained Chism, who met the description of a man reported as having engaged in suspicious behavior at the convenience store. However, the record indicates that Chism posed no danger to Griswold. Chism was alone, and there is no indication that the location of the detention was a high-crime area. Chism was suspected of panhandling, not generally considered a violent offense that could lend itself to justifying concern for officer safety. Griswold confirmed that Chism was nothing but compliant during the encounter. Further, the encounter took place mid-morning, in broad daylight. Griswold testified he saw no bulges that would suggest a concealed weapon and that Chism made no furtive movement that would suggest Chism was about to flee or

15

that Chism posed a threat to Griswold.[7] Griswold testified plainly he had no concern that Chism was

carrying a weapon:

> [DEFENSE COUNSEL]:   Did you see anything on his person that appeared to you that he might have a weapon?
>
> [GRISWOLD]:    No, sir.
>
> . . . .
>
> [DEFENSE COUNSEL]:    Did he make any threats or gestures to you that you took as exhibiting some type of threat towards you?
>
> [GRISWOLD]:    No, sir.
>
> . . . .
>
> [DEFENSE COUNSEL]:    And he did nothing to threaten you in any manner; is that correct?
>
> [GRISWOLD]:    That's correct.

---

[7]There is no evidence that Chism exhibited any of the nonexclusive list of factors that the Texas Court of Criminal Appeals has listed as authorizing a protective search:

> 1) no flight or no furtive gestures or sudden movements towards a pocket or other place where a weapon might be concealed; 2) no threats made and no attempt made to resist detention; 3) appellant is not shown to be committing or about to commit any criminal offense, and; 4) appellant does not seem to be under the influence of alcoholic beverages or drugs.

*Worthey*, 805 S.W.2d at 438–39 (citing *Lippert v. State*, 664 S.W.2d 712, 721 (Tex. Crim. App. 1984)).

Instead, he explained, he performs a pat-down search as a matter of routine: "Every single time I make contact with a suspect[,] I check for weapons for officer safety." "I'm making a contact with a person that I don't know who people are accusing of an offense."

Recognizing that Griswold's testimony regarding his "normal practice" and his lack of subjective fear are not conclusive on the issue, we look to the only evidence in the record touching on a concern for officer safety. This testimony came in Griswold's response to the State's leading questions on the matter:

> [STATE]: Okay. [Defense counsel] makes a big deal about you *Terry* stopping him for no reason, you *Terry* stop everybody in the world. People that are walking in Gilmer, transient population, do they usually have weapons on them?
>
> [GRISWOLD]: Yes.
>
> [STATE]: Okay. Such as?
>
> [GRISWOLD]: I have found knives, screwdrivers, handguns.
>
> [STATE]: A lot of transient population also abuse narcotics?
>
> [GRISWOLD]: Yes, sir.
>
> [STATE]: Would they also have needles, such things on them?
>
> [GRISWOLD]: That is correct.
>
> [STATE]: So were you worried that he might possibly stab you with one of these items?
>
> [GRISWOLD]: Yes.

[STATE]:     Is it normal for you to have these apprehensions of someone walking, panhandling that might hurt you?

[GRISWOLD]:     That's correct.

Much like the officer in *Guevara*, Griswold "acquiesced" to the State's prompting/questioning about safety concerns.  Moreover, Griswold based this concern for officer safety solely on Chism's status as a transient, a status that although suggested, is not conclusively established by the record. Because Chism appeared to be homeless, Griswold assumed that he would be an armed and dangerous narcotics abuser.  And that was his justification for the newly-revealed concern for his safety.

Taking that evidence in the light most favorable to the trial court's ruling, even though it is directly contrary to his earlier testimony, we conclude that such evidence still falls short of the standards set forth in *Terry*.  *Terry* requires that "due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience."  392 U.S. at 27.  The officer "must be able to point to *particular* facts from which he *reasonably* inferred that the individual was armed and dangerous."  *Sibron v. New York*, 392 U.S. 40, 64 (1968) (emphasis added).

Here, we have only generalizations concerning weapons and narcotics abuse within the transient population of Gilmer, Texas.  Assuming the veracity of Griswold's professed concern, we find that it runs afoul of *Terry*'s prohibition of pat-down searches based on "unparticularized suspicion[s] or hunch[es]."  These broad and bold generalizations based on an individual's transient

18

status are insufficient to authorize a reasonable belief or inference that the person is armed and dangerous. To conclude otherwise would subject very nearly any lawfully detained homeless or transient person to a pat-down search at any moment. This is unreasonable.

Similar to the encounter in *Sikes*, we see a daylight detention of a compliant individual suspected of a nonviolent offense, a pat down performed as a matter of routine, and a record devoid of any specific facts to suggest the individual was a danger to the officer or to support the officer's professed concern for safety. Like the officer in *Guevara*, Griswold did acquiesce to the State's leading questioning and testified that he was concerned for his safety. But that concern, based solely on generalizations of a population, is insufficient to serve as justification for the pat-down search. In much the same way as did the Houston First Court in *Guevara*, we reject these "'unparticularized' suspicions or 'hunches' which *Terry* held are not enough to justify a self-protective search." 6 S.W.3d at 764; *see Ybarra*, 444 U.S. at 93 (fact that defendant was wearing 3/4-length lumber jacket which could be expected on almost any tavern patron in Illinois in early March does not articulate any specific fact that would have justified a police officer at scene reasonably concluding defendant was armed and dangerous).

Viewing the evidence in a light most favorable to the trial court's ruling, we find that the only evidence that Griswold was concerned that Chism was armed and dangerous is Griswold's extracted, internally inconsistent testimony concerning his generalized ideas of the transient population. This evidence is contradictory to Griswold's original account that he did not have any concern about a

19

threat or a weapon when approaching Chism who was, by Griswold's own account, compliant during the encounter. Even in a most favorable light, Griswold's later testimony recalling a concern for safety is based on broad generalizations of the homeless population and, as such, falls short of a reasonable belief based on specific, articulable facts that the person is armed and dangerous. *See Terry*, 392 U.S. at 27; *Sheppard*, 271 S.W.3d at 287. Based on the totality of the circumstances and the facts known to Griswold at the moment of the pat down, we find the facts do not support a reasonably prudent concern for officer safety and that the resultant weapons pat down was unjustified; the motion to suppress the controlled substance found in the search should have been granted.

We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

Jack Carter
Justice

Date Submitted:    July 24, 2009
Date Decided:     September 16, 2009

Publish

20