1999-NMCA-115

989 P.2d 431

**In the Matter of JOSUE T., a Child.**

**No. 19,472.**

Court of Appeals of New Mexico.

July 2, 1999.

Certiorari Denied, No. 25,868,
Aug. 23, 1999.

58

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

APODACA, Judge.

{1}   This case presents a question of first impression in New Mexico—Does the Fourth Amendment to the Federal Constitution require probable cause for a full-time, commissioned police officer assigned to a public high school as a resource officer to lawfully search a student during school hours, when the search is conducted at the request of a school official?  We answer that question negatively and hold that under the facts present in this appeal, the officer only required reasonable suspicion, the same, lower standard required of school officials.

{2}   In *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), the United States Supreme Court decided that school officials' special need for flexibility and swiftness in responding to discipline problems makes the warrant and probable cause requirements inappropriate for school officials in the school setting.  We believe the rationale underlying the exception to the warrant and probable cause requirements for school officials applies with equal force where, as here, a school resource officer searched a student at the behest of a school official, who we determine later in our discussion had reasonable grounds for the search.

{3}   In this appeal, Defendant Josue T. (Student), a child, entered a conditional admission to the delinquent act of carrying a deadly weapon on school premises.  He appeals the trial court's denial of his motion to suppress the weapon found on him, arguing that the search and seizure by the school resource officer was unreasonable.  Because we conclude that the school resource officer's search of Student was reasonable under the circumstances existing in this appeal, we hold that the search did not violate Student's Fourth Amendment right to be free from unreasonable searches.  We thus affirm the judgment and disposition, as well as the trial court's denial of Student's motion to suppress the weapon discovered in the search.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{4} On the day in question, Student was driven to his school, Goddard High School in Roswell, New Mexico, in another student's pickup truck. During the morning, the other student was referred to the assistant principal (the school official) because he "smell[ed] heavily of marijuana." In an effort to determine if any other students were in possession of marijuana on the school premises, the school official contacted several of the students who had ridden to school in the pickup truck. The school official went to Student's classroom with the intention of speaking with him briefly. Before speaking to Student, the school official had spoken to and searched the driver of the pickup truck, had spoken to and searched one other student who had ridden to school in the truck, and had searched the truck. No marijuana was found during those searches.

{5} When the school official opened the door to Student's classroom and requested that he meet her in the hallway, Student immediately appeared evasive, which was not his usual manner. When Student stepped into the hallway, the school official noticed that he too smelled of burnt marijuana. At that point, the school official decided that she would take Student to her office to be searched for marijuana. Officer Reese, a school resource officer, joined the school official and Student and accompanied them to the school official's office. A school resource officer is a commissioned police officer assigned to a public school by the officer's police department. Officer Reese was employed full-time by the Roswell Police Department but had a permanent office at the high school, where he was assigned to full-time duty. In performing his duties at the school, the officer was armed and wore a police uniform.

{6} During the time Student was being questioned by the school official outside of his classroom and as he walked with the official and Officer Reese down the hallway to be searched in the school official's office, Student kept both hands in the pockets of his baggy pants. While walking to the school official's office, both the school official and the officer noticed that Student had a large object in the right front pocket of his pants. Based on her observation of this bulging object, Student's atypically quiet demeanor, and the fact that Student kept putting his hand further and further into his pocket, the school official became concerned and wondered what Student might be hiding in his pocket.

{7} Once in the school official's office, the school official told Student that he would be searched and that he should empty his pockets on her desk. Student emptied his left pocket, but would neither empty his right pocket nor remove his hand from the pocket, despite repeated requests to do so. Student's refusal to comply increased the school official's concern about what the Student was hiding in his pocket. She testified that she became concerned and that Student's refusal to take his hand from his pocket created a "safety issue" in her mind. For that reason, she asked Officer Reese to search Student. Based on that request, the officer directed Student to remove his hand from his right pocket, which he refused to do. Officer Reese then took Student's hand from his pocket, reached into the pocket himself, and retrieved a .38 caliber handgun.

{8} The State filed a delinquency petition charging Student with the Unlawful Carrying of a Deadly Weapon on School Premises contrary to NMSA 1978, § 30–7–2.1 (1994). Student entered a conditional admission to this charge, but reserved the right to appeal the denial of his motion to suppress evidence of the weapon. After an evidentiary hearing on the motion to suppress, the trial court entered findings of fact, conclusions of law, and an order denying the motion. The court later entered a judgment and disposition, concluding that Student was delinquent based on his admission of carrying a deadly weapon to school. Student appeals from the judgment and the denial of his motion to suppress.

{9} At this juncture, we observe that Student views the facts differently than we have outlined them above. He notes that, prior to his removal from the classroom, his behavior had not aroused any attention. Student emphasizes that the driver evidently

smelled of marijuana. Although the school official suspected that the students were smoking at the school, no one reported seeing Student or the driver smoking there. Student also points out that the driver did not implicate Student with possession or use of marijuana. Neither the search of the driver nor the search of another student who had been in the truck turned up evidence of marijuana.

{10} Additionally, Student notes that Officer Reese did not testify that Student smelled of marijuana. Student states that he was cooperative as they walked down the hall. The school official testified that, at that time, she did not see anything protruding from his pockets. Student did not say anything or make threats concerning a gun. The school official testified that Student had always been respectful to her in the past. Based on this evidence, Student argues that nothing in the school official's testimony indicates her suspicion that Student was carrying a weapon. Finally, Student notes that Officer Reese did not believe he had probable cause to search Student for drugs.

{11} Because of our standard of review, however, which we note below, Student's rendition of the facts are not determinative of the issue raised on appeal. Our review of this appeal must necessarily defer to the findings entered by the trial court, as long as those findings are supported by substantial evidence.

## II. DISCUSSION

{12} Student contends that the trial court erred in denying his motion to suppress because Officer Reese's search was unreasonable under the Fourth Amendment. This contention is based on Student's argument that the search was conducted without probable cause or a warrant and did not fall within any of the exceptions to these requirements. Because Student does not argue that he was unlawfully searched under Article II, Section 10 of the New Mexico Constitution, we limit our analysis to the Federal Constitution and do not consider whether our state constitution compels the same result. *See State v. Gomez*, 1997–NMSC–006, ¶ 22, 122 N.M. 777,

932 P.2d 1 (providing requirements for preserving state constitutional claim).

{13} In particular, Student argues that the school search exception, which allows school officials to search students based on reasonable grounds without a warrant, *see T.L.O.*, 469 U.S. at 340, 341, 105 S.Ct. 733, does not apply to the search of a student by a school resource officer. Student additionally argues that, even if this exception applies in this case, the officer here did not have reasonable grounds to support the search. Student also contends that: (1) the search cannot be justified as a search incident to a valid arrest because the officer did not have probable cause to arrest; (2) the officer did not have probable cause and exigent circumstances did not exist; and (3) the officer did not have reasonable suspicion to justify an investigatory stop, and even if an investigatory stop was permissible, a pat-down search was not. Because we determine that the school-search exception applies to the facts of this case and that reasonable grounds existed, we need not address Student's other arguments.

### A. Standard of Review

{14} When reviewing the denial of a motion to suppress, we defer to the trial court's "inferences drawn from historical facts." *See State v. Tywayne H.*, 1997–NMCA–015, ¶ 5, 123 N.M. 42, 933 P.2d 251. Determining the reasonableness of a search, however, is a matter of law. As such, we engage in a de novo review of the trial court's determination that the search in this case was reasonable. *See id.* Under our standard of review, we must consider the facts as determined by the trial court "in the light most favorable to the ruling below." *In re Paul T.*, 1997–NMCA–071, ¶ 8, 123 N.M. 595, 943 P.2d 1048.

### B. The *T.L.O.* Standard for Reasonableness Satisfies the Fourth Amendment's Reasonableness Requirement

{15} The Fourth and Fourteenth Amendments protect individuals from unreasonable searches by state actors, including public school officials, whenever those indi-

viduals have a legitimate expectation of privacy. *See T.L.O.*, 469 U.S. at 334, 338, 105 S.Ct. 733. The reasonableness of a particular search is usually gauged by whether the state actor had probable cause and a search warrant. *See Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). The United States Supreme Court, however, has recognized that probable cause and a warrant are not invariably required to render a search reasonable. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Rather, in some cases, "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable," *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (internal quotation marks omitted). For instance, school officials do not need a warrant before searching an individual student at school who is suspected of violating either the law or school policy. *See T.L.O.*, 469 U.S. at 340, 105 S.Ct. 733. *T.L.O.* noted that the warrant requirement "would unduly interfere with the maintenance of the swift and informal disciplinary procedures" needed to create a safe and orderly environment for learning. *Id.* The Supreme Court also decided that " 'strict adherence to the requirement that searches be based on probable cause' would undercut 'the substantial need of teachers and administrators for freedom to maintain order in the schools.' " *Vernonia*, 515 U.S. at 653, 115 S.Ct. 2386 (quoting *T.L.O*, 469 U .S. at 340, 341, 105 S.Ct. 733). Instead, in deciding whether a student search by a school official was lawful, the Supreme Court in *T.L.O.* considered whether the search was reasonable under all the circumstances. *See T.L.O.*, 469 U.S. at 341, 105 S.Ct. 733.

{16} Here, the State argued, and the trial court agreed, that the reasonableness standard established in *T.L.O.* applied to student searches conducted by school resource officers at the request of school officials. Student counters that *T.L.O.* does not apply and that law enforcement officers should be held to the traditional and more stringent Fourth Amendment standard of reasonableness (warrant and probable cause) because they are not school officials and because they pursue different purposes when conducting a search than school officials.

{17} Whether the *T.L.O.* reasonableness standard applies to searches by school resource officers conducted at the request of a school official was not answered in *T.L.O.* Indeed, the Court there expressly limited its holding to searches conducted by school authorities acting independently and on their own authority as custodians and educators of our youth and declined to address "the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies." 469 U.S. at 341 n. 7, 105 S.Ct. 733. We thus must decide whether it is appropriate under the Federal Constitution to adopt the lower standard of reasonableness established in *T.L.O.*, when a school resource officer searches a student at school after being requested to do so by a school official.

{18} Courts in other jurisdictions have decided whether to apply the *T.L.O.* standard by considering the role of the law enforcement agent, as well as the nature and extent of the officer's participation in the investigation and search of the student. The discussions and analysis by these courts appear to fall into three categories. First, the *T.L.O.* standard has been applied in cases in which a school official initiates the search or in which the police involvement is minimal. *See, e.g., Cason v. Cook*, 810 F.2d 188, 191–92 (8th Cir.1987); *J.A.R. v. State*, 689 So.2d 1242, 1243 (Fla.Dist.Ct.App.1997); *In re Interest of Angelia D.B.*, 211 Wis.2d 140, 564 N.W.2d 682, 688 (1997). Second, the "reasonable under the circumstances" standard established in *T.L.O.* also has been applied where a school resource officer, on his or her own initiative and authority, searches a student during school hours on school grounds, in furtherance of the school's education-related goals. *See, e.g., People v. Dilworth*, 169 Ill.2d 195, 214 Ill.Dec. 456, 661 N.E.2d 310, 317 (1996); *In re S.F.*, 414 Pa.Super. 529, 607 A.2d 793, 794 (1992). Third, some courts have held that probable cause applies in cases in which "outside" police officers initiate a student search as part of their own investigation, or in which school officials act

at the behest of "outside" police officers. *See, e.g., Tywayne H.,* 1997–NMCA–015 ¶ 10, 123 N.M. 42, 933 P.2d 251; *F.P. v. State,* 528 So.2d 1253, 1254–55 (Fla.Dist.Ct.App.1988).

{19} We believe the facts in this appeal fall into the first category. To begin with, we note that the circumstances here are significantly different from those in *Tywayne H.* Although language in *Tywayne H.* might suggest that a child's expectation of privacy is lessened in school only as to school officials, but not as to police officers, this Court's analysis in *Tywayne H.* must be understood in its factual context. In that case, four police officers searched a student at an evening dance held at the school. The police searched the student after conducting their own investigation of the student. No school official participated in or even requested the investigation or the search. The police did not interact with, let alone cooperate with, the school administration in the search. Because the officers were collecting evidence to be used to enforce the law and were not furthering any educational goal, this Court concluded that the student's expectation of privacy was not lessened as to these police officers, even though the student was in the school building during a dance at the time of the search. *See Tywayne H.,* 1997–NMCA–015, ¶ 12, 123 N.M. 42, 933 P.2d 251. We thus concluded in *Tywayne H.* that the nature of the student's privacy interest suggested a probable cause standard rather than a reasonable-suspicion or reasonableness-under-the-circumstances standard. *See id.*

{20} Here, however, Officer Reese merely assisted the school official, during the school day, at the school official's request, to protect student welfare and the educational milieu. As this court noted in *Tywayne H.:*

> [T]here is a sharp distinction between the purpose of a search by a school official and a search by a police officer. The nature of a *T.L.O.* search by a school authority is to maintain order and discipline in the school. The nature of a search by a police officer is to obtain evidence for criminal prosecutions.

*Id.* ¶ 13 (citation omitted). The Wisconsin Supreme Court addressed a similar situation and concluded that, "when school officials, who are responsible for the welfare and education of all of the students within the campus, initiate an investigation and conduct it on school grounds in conjunction with police, the school has brought the police into the school-student relationship." *Angelia D.B.,* 564 N.W.2d at 688. A school resource officer serves multiple purposes, including the prevention of crime, law enforcement, and assisting the school administration in creating and sustaining a safe environment conducive to learning. *See id.* at 690. The school resource officer here did not initiate the investigation of Student. Rather, the school official initiated and conducted the entire investigation. Only when the school official became concerned that she was dealing with a "safety issue" did she request that the officer become actively involved—up until that point, the officer had been present but had not participated in the questioning. The officer thus searched Student only when the school official directly asked him to do so. In effect, the officer was the arm of the school official. We therefore conclude that the officer searched Student "in conjunction with school officials and in furtherance of the school's objective to maintain a safe and proper educational environment." *Id.* These factors lead us to conclude that the character of the search here suggests that the lower standard we have determined should apply here is appropriate.

{21} Any other conclusion, such as requiring probable cause of school resource officers when school officials only need reasonable grounds to search,

> might serve to encourage teachers and school officials, who generally are untrained in proper pat down procedures or in neutralizing dangerous weapons, to conduct a search of a student suspected of carrying a dangerous weapon on school grounds without the assistance of a school liaison officer or other law enforcement official.... [I]t could be hazardous to discourage school officials from requesting the assistance of available trained police resources.... The proper standard for the constitutional reasonableness of searches conducted on public school grounds by school officials, or by police working at the

request of and in conjunction with school officials, should not promote unreasonable risk-taking.

*Id.* (citations omitted). The Wisconsin Supreme Court in *Angelia D.B.* concluded that school officials who reasonably suspect that a student is in possession of a dangerous weapon on school grounds may request the assistance of a school resource officer to conduct a search. *See id.* The Wisconsin court's reasoning is both thoughtful and realistic, and we adopt it here. In doing so, we are mindful of the testimony of the school official and the school resource officer that they actually did not know what Student was hiding in his pocket. Nonetheless, both became concerned that the bulge in the pocket presented them with an unsafe situation that should be addressed in the interests of security.

## C. Reasonable Grounds Existed for the Search in This Case

{22} Having determined that the *T.L.O.* standard requiring reasonableness under the circumstances applies to searches by school resource officers when undertaken at the request or direction of a school official, we now turn to whether reasonable grounds existed for the search in this case. In making such an assessment, the United States Supreme Court considered "'whether the [search] was justified at its inception,' [and] whether the search as actually conducted 'was reasonably related in scope to the circumstances [that] justified the interference in the first place.'" *T.L.O.,* 469 U.S. at 341, 105 S.Ct. 733 (quoting *Terry,* 392 U.S. at 20, 88 S.Ct. 1868). For the reasons that follow, we hold that reasonable grounds existed for the search in this case.

### 1. The Search Was Justified at Its Inception

{23} A search is justified at its inception if the school resource officer had reasonable suspicion to believe that Student had violated a law or a school policy and that "the search would uncover evidence of the violation." *Tywayne H.,* 1997–NMCA–015, ¶ 8, 123 N.M. 42, 933 P.2d 251. Here, the school official and the officer initially suspected that Student might be in possession of marijuana on school grounds, in violation of

the law and school policy. For this suspicion to be reasonable, it had to be based on specific, reasonable inferences drawn from the facts and based on experience. *See Terry,* 392 U.S. at 27, 88 S.Ct. 1868. A suspicion based on an "inchoate and unparticularized suspicion or 'hunch'" would not be reasonable. *Id.* In this case, the officer and the school official observed (1) Student acting in an unusually quiet and evasive manner, (2) Student refusing to empty the pocket in question, (3) Student refusing to remove his hand from the same pocket, and (4) Student's pocket bulging with an obviously heavy object. The officer testified that his professional experience informed him that Student was hiding something and that the object might be dangerous.

{24} As noted previously, we must view the facts in the State's favor. *See In re Paul T.,* 1997–NMCA–071, ¶ 8, 123 N.M. 595, 943 P.2d 1048. "Resolution of factual conflicts, credibility, and weight is the task of the trial court." *State v. Roybal,* 115 N.M. 27, 29, 846 P.2d 333, 335 (Ct.App.1992). Under this standard of review, we hold that the school official's and the officer's suspicions that a law or school policy was being violated were reasonable. Equally important were the facts known to the school official before she decided to talk to Student. Informed that the driver of the pickup truck smelled heavily of marijuana, the school official had reason to suspect that someone in the truck had smoked marijuana on the way to school. Having such knowledge and making that inference, she could reasonably assume that one of the students possessed marijuana in the truck and still might be possessing it on school premises, not only in violation of the law but of school rules. Because a search of the truck's driver, of another student riding in the truck, and of the truck itself did not produce the illicit drug, the school official had reason to believe that Student might have marijuana in his possession. Since Student appeared to be evasive when confronted, smelled of burnt marijuana, and kept his hands in his pockets, the school official had additional grounds to search Student.

{25} Our holding is consistent with other states' case law providing that the odor of marijuana on or near the defendant along with other factors were "sufficient basis for a search by school officials." Alexander C. Black, Annotation, *Search Conducted by School Official or Teacher as Violation of Fourth Amendment or Equivalent State Constitutional Provision*, 31 A.L.R.5th 229, § 63 (1995); *see also Widener v. Frye*, 809 F.Supp. 35, 38 (D.Ohio 1992) (upholding search of student where he smelled of marijuana and was sluggish); *In re Doe*, 77 Hawai'i 435, 887 P.2d 645, 652–53 (1994) (holding that search of student was reasonable where school officials detected odor of marijuana emanating from "tunnel" that student was in and which was an area where students were known to smoke marijuana); *Nelson v. State*, 319 So.2d 154, 155 (Fla.Dist.Ct.App. 1975) (holding that reasonable suspicion of student existed where he was observed smoking and smelled of marijuana).

{26} Additionally, under the second prong of the test, the search of Student's pocket was highly likely to uncover evidence of a violation because the pocket was the very location Student appeared to be hiding an unknown object. The search was therefore justified at its inception.

### 2. The Search Was Permissible in Scope

 {27} A search is permissible in scope when it is "reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342, 105 S.Ct. 733. The search here satisfies these requirements. The search was limited to the very pocket where the school official and the officer noticed a "bulge" that Student appeared to be attempting to hide. The actual search, then, was neatly tailored to its objective—discovering what Student was trying to hide—as well as the nature of the suspected infraction. Additionally, this limited search was not excessively intrusive in light of the age and sex of the student. Student, a male, was searched by a male officer. Nothing in this search raised concerns related to Student's

age. We thus determine that the scope of the search was permissible.

### III. CONCLUSION

{28} We conclude that school resource officers may lawfully search a student on school grounds at the behest of a school official as long as the search is reasonable under the circumstances. We thus hold that probable cause to conduct the search was not required under the facts of this case. The search here was reasonable under the circumstances because it was justified at its inception, did not exceed the scope of its purpose, and was not overly intrusive in light of Student's age and sex. We therefore affirm the trial court's denial of Student's motion to suppress.

{29} **IT IS SO ORDERED.**

DONNELLY and HARTZ, JJ., concur.