ATTORNEYS FOR APPELLANT
Thomas J. Lantz
Ryan W. Redmon
Montgomery, Elsner & Pardieck, LLP
Seymour, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Christopher L. Lafuse
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 72S01-0406-CR-249

JOHN P. MYERS,                                               *Appellant (Defendant below),*

v.

STATE OF INDIANA,                                           *Appellee (Plaintiff below).*

Interlocutory Appeal from the Scott Superior Court, No. 72D01-0212-FD-326
The Honorable Nicholas South, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 72A01-0306-CR-217

**December 21, 2005**

**Dickson, Justice.**

In this interlocutory appeal, the defendant, high school student John P. Meyers, challenges the trial court's order denying his motion to suppress evidence resulting from a search of his vehicle in the school parking lot. The Court of Appeals affirmed. Myers v. State, 806 N.E.2d 350 (Ind. Ct. App. 2004). We granted transfer and likewise affirm the denial of the defendant's motion to suppress.

1

Charged with possession of a firearm on school property, a class D felony,[1] the defendant filed a motion to suppress evidence seized during the search of his vehicle. Following an evidentiary hearing, the trial court denied the motion with a detailed order that included specific findings of fact, among which were the following:

> 1. This matter arises from a narcotic drug dog sweep conducted at the Austin High School on December 12, 2002. As a result of the sweep the Defendant's automobile was searched and a firearm was seized from the vehicle . . . .
> . . . .
> 3. . . . The Defendant clearly did not consent to the search of his vehicle.
> 4. . . . [T]he evidence was that the Austin High School was a closed campus, and therefore Defendant was not free to leave school at any time he desired. The facts, herein, show that . . . the vehicle [was] no longer "inherently mobile" and that to require that a Police Officer obtain a search warrant would not have been unreasonable.
> 5. The actual search of the vehicle was made herein not by a Police Officer but by a School Official . . . . The evidence, while indicating that the Police participated in the sweep, the record does not contain evidence that the police coerced, dominated or directed the actions of the School. Rather it was the School who determined that the sweep would take place, where the sweep was to be conducted, and the range of time in which the sweep was to be conducted, further it was the School who did any search after the dog had alerted to a locker or vehicle. . . .
> 6. Having determined that the School Officials herein did not act as agents of the Police, . . . [t]he Court, here, finds that the action of the School Officials in conducting the search of the Defendant's vehicle was not unreasonable under the circumstances . . . .

Appellant's App'x. 4-6. Upon the defendant's motion, the trial court certified its decision for interlocutory appeal.

Acknowledging that school officials are subject to a less demanding constitutional standard for student searches and seizures than that applied to law enforcement officials, the defendant contends that such relaxed standards should not apply here due to substantial police involvement. He urges that the challenged actions were a police search, not a school search; that the use of police narcotic drug dogs at his particular vehicle was not supported by reasonable particularized suspicion; and that the resulting warrantless search of his vehicle was not justified by his consent or by the automobile exception to the warrant requirement. Each of the defendant's contentions asserts a violation of both the state and federal constitutions.

The defendant separately identifies the Search and Seizure Clause of the Indiana Consti-

---

[1] Indiana Code § 35-37-9-2.

tution, Article 1, Section 11, and its reasonableness requirement. But as to both of his claims that the dog sniff required reasonable suspicion and that the ensuing warrantless vehicle search was invalid, he does not present any claim or argument that Section 11 requires a different analysis or yields a different result than that produced under the federal Fourth Amendment. Where a party, though citing Indiana constitutional authority, presents no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from its federal counterpart, we resolve the party's claim "on the basis of federal constitutional doctrine and express no opinion as to what, if any, differences there may be" under the Indiana Constitution. Williams v. State, 690 N.E.2d 162, 167 (Ind. 1997); see also White v. State, 772 N.E.2d 408, 411 (Ind. 2002); Matheney v. State, 688 N.E.2d 883, 906 n.29 (Ind. 1997); Fair v. State, 627 N.E.2d 427, 430 n.1 (Ind. 1993); State v. Hurst, 688 N.E.2d 402, 403 n.1 (Ind. 1997); Games v. State, 684 N.E.2d 466, 473 n.7 (Ind. 1997); Gregory-Bey v. State, 669 N.E.2d 154, 157 n.8 (Ind. 1996); Tobias v. State, 666 N.E.2d 68, 72 n.1 (Ind. 1996); Bryant v. State, 660 N.E.2d 290, 295 n.12 (Ind. 1995); Bivens v. State, 642 N.E.2d 928, 936 n.1 (Ind. 1994); St. John v. State, 523 N.E.2d 1353, 1355 (Ind. 1988). We thus address the defendant's contentions in light of federal, not state, constitutional law.

With respect to his claim that the dog sniff was unconstitutional, the defendant concedes that such dog sniffs are not "searches" requiring probable cause under the Fourth Amendment to the United States Constitution, but he contends that canine sniff activities must be supported by reasonable individualized suspicion, citing Cannon v. State, 722 N.E.2d 881, 884 (Ind. Ct. App. 2000) and Kenner v. State, 703 N.E.2d 1122, 1125 (Ind. Ct. App. 1999), as well as several federal cases condemning "fishing expeditions." The defendant argues that the sniff test in this case lacked individualized reasonable suspicion, and thus the evidence should be suppressed.

The United States Supreme Court has recently addressed "[w]hether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop." Illinois v. Caballes, 543 U.S. 405, 125 S.Ct. 834, 837, 160 L.Ed.2d 842, 846 (2005). The Supreme Court observed that the dog sniff was performed on the exterior of a car and held that "[a]ny intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement." Caballes, 125 S.Ct. at 838, 160 L.Ed.2d at 847. Noting the absence of any contention that the traffic stop involved an unreason-

able detention, the Court concluded: "A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Caballes, 125 S.Ct. at 838, 160 L.Ed.2d at 848. The effect of Caballes is to supercede the defendant's assertions regarding Cannon and Kenner on this point.[2]

In the present case, the defendant's car was subjected to the narcotics dog sniff test as it was parked and unoccupied and the defendant was in school. In light of Caballes, we reject the defendant's claim that reasonable individualized suspicion was required by the federal constitution before officials could use a trained narcotics-detection dog to sniff the outside of the defendant's unoccupied motor vehicle.

The defendant's other contention is that the warrantless search of his vehicle was not justified by the automobile exception to the general rule that a warrant is required for a search, nor by his consent. Resolution of this challenge requires consideration of whether the search of the defendant's vehicle is governed by the less demanding constitutional standard for searches and seizures conducted by school officials.

The Fourth Amendment protects students from encroachments by public school officials, who act as state officers. New Jersey v. T.L.O., 469 U.S. 325, 333-34, 105 S.Ct. 733, 738, 83 L.Ed.2d 720, 729 (1969). Thus, school children have a legitimate expectation of privacy in personal-property articles carried on campus. Id. at 338-39, 105 S.Ct. at 741, 83 L.Ed.2d at 733. ("We are not yet ready to hold that schools and the prisons need be equated for purposes of the Fourth Amendment."). But "while children assuredly do not 'shed their constitutional rights . . . at the schoolhouse gate,' . . . the nature of those rights is what is appropriate for children in school." Vernonia School District 47J v. Acton, 515 U.S. 646, 655-56, 115 S.Ct. 2386, 2392, 132 L.Ed.2d 564, 576 (1995) (quoting Tinker v. Des Moines Independent Community

_____

[2] Both cases were decided under federal constitutional jurisprudence. Cannon refers only to the Fourth Amendment and makes no reference to the Indiana Constitution. In Kenner, the court notes the defendant's argument that the test for warrantless searches are not identical under the federal and state constitutions, but decides the case solely under the Fourth Amendment because it presents an issue of reasonable suspicion justifying an investigatory stop, not one of probable cause supporting a warrantless search. 703 N.E.2d at 1125.

School Dist., 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969)). Students' privacy interests must be balanced with "the substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds," a task that has become increasingly difficult with the pervasive onslaught of drugs and violent crimes in schools. T.L.O., 469 U.S. at 339, 105 S.Ct. at 741, 83 L.Ed.2d at 733. Accordingly, "the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject," so that school officials "need not obtain a warrant before searching a student who is under their authority." *Id.* at 340, 105 S.Ct. at 742, 83 L.Ed.2d at 733-34. Such searches only depend on "the reasonableness, under all the circumstances, of the search." *Id.* at 341, 105 S.Ct. at 742, 83 L.Ed.2d at 734.

The defendant argues that the warrantless search of his vehicle resulted from the substantial involvement of police with school officials and thus amounted to a constitutionally unreasonable search and seizure. The defendant maintains that, because the police involvement in the search here was substantial, rather than minimal, the relaxed constitutional standard set out in T.L.O. is inapplicable, and that the warrant requirement should be fully applicable to prohibit the challenged search.

Although in T.L.O. the United States Supreme Court clearly relaxed the Fourth Amendment standard for school officials searching students, it expressly left open the appropriate standard for determining the legality of searches "conducted by school officials in conjunction with or at the behest of law enforcement agencies . . . ." *Id.* at 342 n.7, 105 S.Ct. at 743 n.7, 83 L.Ed.2d at 735 n.7. In the face of this open question, many lower courts have identified standards for three different possible scenarios of police involvement in searches of students in schools: (1) where school officials initiate the search or police involvement is minimal, the reasonableness standard is applied; (2) where the search is conducted by the school resource officer on his or her own initative to further educationally related goals, the reasonableness standard is applied; and (3) where "outside" police officers initiate the search of a student for investigative purposes, the probable cause and warrant requirements are applied. In re Angelia D.B., 211 Wis. 2d 140, 151-53, 564 N.W.2d 682, 686-87 (Wis. 1997); People v. Dilworth, 169 Ill. 2d 195, 206-07, 661 N.E.2d 310, 316-17 (Ill. 1996); Russell v. State, 74 S.W.3d 887, 892-93 (Tex. App. 2002); In the Matter of Josue T., 1999-NMCA-115, 17-18, 128 N.M. 56, 61-62, 989 P.2d 431,

5

436-37 (N.M. Ct. App. 1999). We find this approach and analysis persuasive. Thus, where a search is initiated and conducted by school officials alone, or where school officials initiate a search and police involvement is minimal, the reasonableness standard is applicable. And the ordinary warrant requirement will apply where "outside" police officers initiate, or are predominantly involved in, a school search of a student or student property for police investigative purposes.

The trial court determined as a matter of historical fact that the school officials, not the police, conducted the searches and that the police only assisted the school officials. The decision to conduct the sweep was made by the school and, although the time and date of the sweep was determined by the police, it was within a range of dates determined by the school; the areas to be searched were determined by the school; and the actual search was conducted by school officials. Because these facts from the record support the trial court's finding that the school initiated and conducted the search and sought only supporting police resources such as trained narcotics dogs that were not available to the school, we find that the propriety of the vehicle search under the Fourth Amendment is governed by the reasonableness test, not the warrant requirement.

To determine whether a school search is reasonable, we consider: (1) whether the action was justified at its inception, and (2) whether the search conducted was reasonably related in scope to the circumstances that justified the interference in the first place. T.L.O., 469 U.S. at 341-42, 105 S.Ct. at 742-43, 83 L.Ed.2d at 734-35. A search by school officials is justified at its inception if "there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school," and a search is permissible in scope if "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.*

Although a reviewing court should deferentially review trial court findings of historical fact, giving due weight to inferences drawn from those facts, the determinations of reasonable suspicion and probable cause for warrantless searches is to be determined on a *de novo* standard on appeal. Ornelas v. United States, 517 U.S. 690, 694-700, 116 S.Ct. 1657, 1660-700, 134

6

L.Ed.2d 911, 917-21 (1996). We apply the same standard to our review of the reasonableness of this school search. We conclude, however, that the search was reasonable from its inception because it was conducted after an alert by a police narcotics dog. Furthermore, the search as conducted was reasonably related in scope because the school officials limited their searches to those areas upon which the dogs alerted. The vehicle search by school officials was thus reasonable.

Because reasonable suspicion is not required for a canine narcotics sniff of the exterior of an automobile that does not involve an unreasonable detention of a person, and because the search was predominantly initiated and conducted by the school officials of Austin High School and was reasonable, we affirm the trial court's denial of the defendant's motion to suppress the firearm seized from the defendant's vehicle as a result of the search.

Shepard, C.J., and Boehm, J., concur.
Sullivan, J., dissents with separate opinion.
Rucker, J., dissents with separate opinion.

**Sullivan, Justice, dissenting.**

I respectfully dissent. While I am willing to accept for purposes of analysis in this case the tripartite standard for determining the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies, I cannot agree that the search in this case was, as the Court says, conducted by a "school resource officer on his or her own initiative to further educationally related goals." Slip op. at 5. Each of the searches "conducted by school officials with only the assistance of police" cited by the Court involved fact patterns where the assisting police officers were employees of the local police department who were providing security at the school.[1] The facts here are dramatically different; there is nothing in the record to suggest that any of the officers involved in this case were only school police or liaison officers as they were in all of the cases cited by the Court.

Here is the State's description of what happened:

> Prior to December 12, 2002, the Scott County School Board authorized the Superintendent to arrange with police for police dogs to sweep the schools for contraband. Although the school knew that the sweep would occur, it did not know the exact date. On December 12, 2003, canine officers from the Austin, Bedford, Linton, and French Lick police departments as well as additional officers from the Austin Police Department went to Austin High School to conduct such a sweep. When the officers arrived, the school officials required all of the students to stay in their classrooms for safety purposes.

Br. of Appellee at 2 (citations to Transcript omitted). The sweep itself was conducted only by police officers and their animals. During the sweep,

---

[1] State v. Angelia D.B., 564 N.W.2d 682, 684 (Wis. 1997) (search conducted by "a City of Neenah police officer and school liaison officer on duty at Neenah High School at the time"); People v. Dilworth, 661 N.E.2d 310, 313 (Ill. 1996) (search conducted by "a police officer employed by the Joliet police department and was assigned full-time to the Alternate School as a member of its staff"); Russell v. State, 74 S.W.3d 887, 889 (Tex. Ct. App. 2002) (search conducted by "a police officer assigned to the high school"); In the Matter of Josue T., 989 P.2d 431, 434 (N.M. Ct. App. 1999) (search conducted by "a school resource officer . . . employed full-time by the Roswell Police Department but had a permanent office at the high school, where he was assigned to full-time duty").

1

> [t]he dog sniffed the grill of [a red Jeep Cherokee] then sat down, indicating the presence of narcotics. . . . The driver of the vehicle, Defendant John Myers, was summoned from class. Charles Wayne, the assistant principal of Austin High School, asked Defendant to open his locked vehicle. During the search Wayne discovered a loaded nine-millimeter handgun in the jeep under the front driver's seat.

Id.

In my view, this search, even though authorized by the school board as a general matter more than a year prior to its occurring and even though an assistant principal examined the vehicle, cannot be said to have been, using the Court's own test, "conducted by the school resource officer on his or her own initiative to further educationally related goals." Slip op. at 5. The descent of officers upon the school from four separate police departments without any advance notice and their vehicle-by-vehicle search of the cars in the parking lot, it seems to me, constituted a search, again using the Court's test, "where 'outside' police officers [had] initiate[d] the search" for "investigative purposes." Id. As such, under the Court's own formulation, the probable cause and warrant requirements applied. Id.

I also respectfully disagree on the applicability of Illinois v.Caballes as precedent in this case. 125 S.Ct. 834 (2005). At issue in Caballes was whether a dog sniff itself infringed upon Caballes's constitutionally protected privacy interest during a traffic stop that was lawful at its inception and otherwise executed in a reasonable manner. Id. at 837. Caballes had been stopped on a highway based on probable cause and there is nothing in the opinion to suggest that the dog sniff would not have violated the Fourth Amendment but for the concededly lawful traffic stop. (The Caballes opinion also suggests that the sniff was valid only with respect to drug contraband; that it would not have extended to the weapon discovered here.) Id. at 838 ("A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."). Here, of course, the defendant was not the subject of lawful detention—or any detention at all—at the time of the dog sniff. His situation is much more like that of the defendant in City of Indianapolis, et al. v. Edmond, 531 U.S. 32 (2000). In that familiar case, the Court held that the use of dog sniffs as part of brief, standardized, discretionless, automobiles stops violated

2

the Fourth Amendment.  <u>Id.</u> at 44.

**Rucker, Justice, dissenting.**

The United States Supreme Court has determined that under limited circumstances a sniff test by a trained narcotics dog is not a search within the meaning of Fourth Amendment. City of Indianapolis v. Edmond, 531 U.S. 32, 40 (2000) ("A sniff by a dog that simply walks around a car is much less intrusive than a typical search."); United States v. Place, 462 U.S. 696, 706-07 (1983) (The exposure of the defendant's luggage "to a trained canine did not constitute a 'search' within the meaning of the Fourth Amendment."). And there is authority for the proposition that an alert by a trained narcotics dog may be enough to establish probable cause. See, e.g., Florida v. Royer, 460 U.S. 491, 505 (1983) (noting disagreement among the circuits on this issue, but commenting, "A negative result [sniff test by a trained dog] would have freed Royer in short order; a positive result would have resulted in his justifiable arrest on probable cause."); United States v. Brown, 24 F.3d 1223, 1226 (10th Cir. 1994) ("[W]hen the canine alerted to Brown's Lincoln, the authorities had 'probable cause' to impound the vehicle, . . . and thereafter obtain . . . a warrant.").

Taken together these cases seem to stand for the proposition that: (i) no warrant is required in the first instance for the use of a trained narcotics dog, and (ii) once the dog alerts to the presence of narcotics, probable cause has been established either to obtain a warrant or search pursuant to an exception. The question presented in this case however is one step removed, namely: whether something less than probable cause, i.e., reasonable articulable suspicion of criminal activity, is required before a narcotics dog may be used to conduct a sniff test.

The majority is of the view that the recent United States Supreme Court opinion in Illinois v. Caballes, 125 S.Ct. 834 (2005), is dispositve of this issue. I respectfully disagree. In that case, an Illinois State Trooper stopped Roy Caballes for speeding. As the trooper radioed in the information, a second trooper, a part of a Drug Interdiction Team, overheard the transmission and arrived on the scene with a drug-sniffing dog. Id. at 836. While the first trooper was writing a warning ticket, the second trooper walked the dog around the car. The dog alerted at the trunk and the troopers opened it and found marijuana. After the trial court denied his motion to suppress, Caballes was convicted of trafficking in marijuana. Id. The Illinois Appellate Court af-

firmed the conviction, and the Supreme Court of Illinois reversed, holding that the drug evidence should have been suppressed.  Id. at 836-37.  The United States Supreme Court granted certiorari, but on a very limited ground.  As the Court put it: "The question on which we granted certiorari . . . is narrow: 'Whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle *during a legitimate traffic stop*.'"  Id. at 837 (emphasis added).  The narrowness of the Court's holding was emphasized at several points throughout the opinion:

> In our view, conducting a dog sniff would not change the character of *a traffic stop* that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy.

Id. (emphasis added).

> [T]he use of a well-trained narcotics-detection dog—one that "does not expose noncontraband items that otherwise would remain hidden from public view"—*during a lawful traffic stop*, generally does not implicate legitimate privacy interests.  In this case, the dog sniff was performed on the exterior of respondent's car *while he was lawfully seized for a traffic violation*.  Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement.

Id. at 838 (emphases added) (citation omitted).

> A dog sniff conducted during a *concededly lawful traffic stop* that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment.

Id. (emphasis added).  It appears to me that the Supreme Court's emphasis on dog sniffs in the context of traffic stops was deliberate.  The Court could have said, as the majority says in this case, that the dog sniff was justified solely because the car was "parked and unoccupied."  Slip op. at 4.  But it did not.  In my view the majority's position here expands the use of drug sniffing dogs to a variety of contexts not specifically sanctioned by the Caballes court.  Indeed, in a dissenting opinion Justice Souter made a similar point.  Although complaining that the Court's stated reasoning "provides no apparent stopping point," Justice Souter pointed out that he did not

believe the Court's was "actually signaling recognition of a broad authority to conduct suspicionless sniffs for drugs in any parked car . . . or on the person of any pedestrian minding his own business on a sidewalk." Caballes, 125 S.Ct. at 842 (Souter, J., dissenting).

In essence, we are writing on a clean slate. Or perhaps, more precisely, Caballes leaves open the question of whether, in contexts other than traffic stops, the use of a drug-sniffing dog requires reasonable articulable suspicion of criminal activity. Although apparently acknowledging that use of a drug-sniffing dog is not a search within the meaning of the Fourth Amendment, at least one federal circuit is of the view that reasonable suspicion is nonetheless required before the dog can ply its trade. See, e.g., United States v. Quinn, 815 F.2d 153, 159 (1st Cir. 1987) (Holding, in the context of car parked in a driveway, "[t]o be entitled to use a dog for purposes of making a sniff test, the officers were required merely to have had 'reasonable suspicion' that the car contained narcotics, at the moment it was performed."); see also United States v. Place, 462 U.S. 696, 723 (1983) ("A dog sniff may be a search, but a minimally intrusive one that could be justified in this situation under Terry upon mere reasonable suspicion.") (Blackmun, J., concurring in an opinion that held the Fourth Amendment not violated by a dog sniff of a piece of luggage that was seized, pre-sniff, based upon suspicion of drugs).[1]

Unlike the majority I am unwilling to expand the reach of Caballes beyond that which the Court itself articulated. Rather, it appears to me that the use of a dog's keen sense of smell to detect the presence of contraband within a car parked in a parking lot is a Fourth Amendment intrusion, albeit a limited one. I would hold therefore that before an officer may subject a vehicle, lawfully parked in a parking lot, to a canine sniff, the officer must first have at least a rea-

---

[1] Although not at issue in this case, several state courts have concluded that under their state constitutions reasonable suspicion is required for the use of drug sniffing dogs. See, e.g., McGahan v. State, 807 P.2d 506, 510-11 (Alaska Ct. App. 1991) (canine sniff of warehouse exterior accessible to public is state constitutional search requiring reasonable, articulable suspicion); People v. Unruh, 713 P.2d 370, 377-78 (Colo. 1986), cert. denied (canine sniff of safe is state constitutional search requiring reasonable, articulable suspicion); State v. Pellicci, 580 A.2d 710, 715-17 (N.H. 1990) (canine sniff of vehicle's exterior is state constitutional search requiring reasonable, articulable suspicion); People v. Dunn, 564 N.E.2d 1054, 1058 (N.Y. 1990), cert. denied (canine sniff of common hallway outside defendant's apartment door is state constitutional search requiring reasonable, articulable suspicion); Commonwealth v. Johnston, 530 A.2d 74, 79 (Pa. 1987) (canine sniff of rented storage locker is state constitutional search requiring reasonable, articulable suspicion); Cf. Commonwealth v. Martin, 626 A.2d 556, 560 (Pa. 1993) (canine sniff of defendant's person requires probable cause).

sonable articulable suspicion that a crime is being committed. Otherwise such an intrusion is constitutionally impermissible. Because the officer in this case had no suspicion of criminal activity of any kind, the use of the drug-sniffing dog was in violation of the Fourth Amendment.

I also disagree with the majority's view that the search of Myers' vehicle was justified by the less demanding constitutional standard for searches and seizures conducted by school officials. The majority is certainly correct that T.L.O. "expressly left open the appropriate standard for determining the legality of searches 'conducted by school officials in conjunction with or at the behest of law enforcement agencies.'" Slip op. at 5 (quoting New Jersey v. T.L.O., 469 U.S. 325, 342 n.7 (1969)). And it is also the case that, since T.L.O., courts have taken a variety of approaches in determining whether T.L.O.'s reasonable suspicion standard applies or whether probable cause is required when police are involved in searches of students in school.

Here, the majority has sided with those jurisdictions holding that where "police involvement is minimal," the T.L.O. reasonableness standard applies. First, it is my view that the police involvement in this case was far more pervasive than the majority suggests. But more importantly the majority's view is inconsistent with a key underlying tenet of the "special needs" cases. Namely, the evidence obtained was not used or intended to be used for criminal law enforcement purposes.[2] This point was made clear in a fairly recent case in which the Supreme Court invalidated a state hospital policy that set forth procedures for identifying and testing pregnant patients suspected of drug use, and supplying information to police for the arrest of patients testing positive for drugs. The Court explained:

> [T]he immediate objective of the searches was to generate evidence *for law enforcement purposes* . . . . We italicize those words lest our reasoning be misunderstood. In none of our previous special needs cases have we upheld the collection of evidence for criminal law enforcement purposes.

Ferguson v. City of Charleston, 532 U.S. 67, 83 (2001) (emphasis in original).

---

[2] T.L.O. was not itself a so-called "special needs" case. But the doctrine has its genesis in Justice Blackmun's concurring opinion. He wrote, "[o]nly in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable, is a court entitled to substitute its balancing of interests for that of the Framers." T.L.O., 469 U.S. at 351. (Blackmun, J., concurring).

4

> None of our special needs precedents has sanctioned the routine inclusion of law enforcement . . . . The traditional warrant and probable-cause requirements are waived in our previous [special needs] cases on the explicit assumption that the evidence obtained in the search is *not intended to be used for law enforcement purposes*.

Ferguson, 532 U.S. at 88 (Kennedy, J., concurring in result) (emphasis added); see also Bd. of Educ. v. Earls, 536 U.S. 822, 833 (2002) (upholding constitutionality of school drug testing policy in part on grounds that, "the Policy clearly requires that the test results be kept in confidential files separate from a student's other educational records and . . . the test results are not turned over to any law enforcement authority. Nor do the test results here lead to the imposition of discipline or have any academic consequences.").[3]

In this case, precisely because the school's drug prevention and detection policy was intended to (and did in fact) result in the seizure of evidence for law enforcement purposes, the traditional probable cause requirement was not waived. Indeed I endorse the view expressed by the Florida Court of Appeals: "where a law enforcement officer directs, participates or acquiesces in a search conducted by school officials, the officer must have probable cause for that search, even though the school officials acting alone are treated . . . to a lesser constitutional standard. . . ." A.J.M. v. State, 617 So.2d 1137, 1138 (Fla. Dist. Ct. App. 1993) (reversing juvenile adjudication of delinquency where police officer seized drugs after searching student at the request of school principal) (citing M.J. v. State, 399 So.2d 996, 998 (Fla. Dist. Ct. App. 1981)). See also United States v. Mekjian, 505 F.2d 1320, 1327 (5th Cir. 1975) ("[W]here [government] officials actively participate in a search being conducted by private parties or else stand by watching with approval as the search continues, [government] authorities are clearly implicated in the search and it must comport with fourth amendment requirements.").

---

[3] A similar rationale apparently was at the heart of this Court's majority opinion in Linke v. Northwestern School Corp., 763 N.E.2d 972 (Ind. 2002). In that case the Court upheld, on Indiana Constitutional grounds, a school's policy of conducting random drug testing of certain students. In doing so the Court noted: "Under the Policy, testing positive for banned substances does not result in academic penalty, results of drug test are not documented in any student's academic records, and information regarding the results is not disclosed to criminal or juvenile authorities absent binding legal compulsion." Id. at 975.

5

In sum, I am of the opinion that the seizure of the handgun in this case cannot be justified on the grounds proposed by the majority. I therefore dissent and would reverse the trial court's denial of Myers' motion to suppress.