SULLIVAN, Justice,
dissenting.
I respectfully dissent. While I am willing to accept for purposes of analysis in this case the tripartite standard for determining the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies, I cannot agree that the search in this case was, as the Court says, conducted by a "school resource officer on his or her own initiative to further educationally related goals." Op. at 1160. Each of the searches "conducted by school officials with only the assistance of police" cited by the Court involved fact patterns where the assisting police officers were employees of the local police department who were providing security at the school.[1] The facts here are dramatically different; there is nothing in the record to suggest that any of the officers involved in this case were only school police or liaison officers as they were in all of the cases cited by the Court.
Here is the State's description of what happened:
Prior to December 12, 2002, the Scott County School Board authorized the Superintendent to arrange with police for police dogs to sweep the schools for contraband. Although the school knew that the sweep would occur, it did not know the exact date. On December 12, 2003, canine officers from the Austin, Bedford, Linton, and French Lick police departments as well as additional officers from the Austin Police Department went to Austin High School to conduct such a sweep. When the officers arrived, the school officials required all of the students to stay in their classrooms for safety purposes.
Br. of Appellee at 2 (citations to Transcript omitted). The sweep itself was conducted only by police officers and their animals. During the sweep,
*1162 [tlhe dog sniffed the grill of [a red Jeep Cherokee] then sat down, indicating the presence of narcotics.... The driver of the vehicle, Defendant John Myers, was summoned from class. Charles Wayne, the assistant principal of Austin High School, asked Defendant to open his locked vehicle During the search Wayne discovered a loaded nine-millimeter handgun in the jeep under the front driver's seat.
Id.
In my view, this search, even though authorized by the school board as a general matter more than a year prior to its occurring and even though an assistant principal examined the vehicle, cannot be said to have been, using the Court's own test, "conducted by the school resource officer on his or her own initiative to further educationally related goals." Op. at 1160. The descent of officers upon the school from four separate police departments without any advance notice and their vehicle-by-vyehicle search of the cars in the parking lot, it seems to me, constituted a search, again using the Court's test, "where 'outside' police officers [had] initiate[(d] the search" for "investigative purposes." Id. As such, under the Court's own formulation, the probable cause and warrant requirements applied. Id.
I also respectfully disagree on the applicability of Illinois v. Caballes as precedent in this case. 548 U.S. 405, 125 S.Ct. 834, 160 LEd.2d 842 (2005). At issue in Ca-balles was whether a dog sniff itself infringed upon Caballes's constitutionally protected privacy interest during a traffic stop that was lawful at its inception and otherwise executed in a reasonable manner. Id. at 837, 160 L.Ed.2d 842. Ca-balles had been stopped on a highway based on probable cause and there is nothing in the opinion to suggest that the dog sniff would not have violated the Fourth Amendment but for the concededly lawful traffic stop. (The Cauballes opinion also suggests that the sniff was valid only with respect to drug contraband; that it would not have extended to the weapon discovered here.) Id. at 888, 160 L.Ed.2d 842 ("A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."). Here, of course, the defendant was not the subject of lawful detention-or any detention at all-at the time of the dog sniff. His situation is much more like that of the defendant in City of Indianapolis, et al. v. Edmond, 531 U.S. 82, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). In that familiar case, the Court held that the use of dog sniffs as part of brief, standardized, discretionless, automobiles stops violated the Fourth Amendment. Id. at 44, 121 S.Ct. 447.

. State v. Angelia D.B., 211 Wis.2d 140, 564 N.W.2d 682, 684 (1997) (search conducted by "a City of Neenah police officer and school liaison officer on duty at Neenah High School at the time"); People v. Dilworth, 169 Ill.2d 195, 214 Ill.Dec. 456, 661 N.E.2d 310, 313 (1996) (search conducted by "a police officer employed by the Joliet police department and was assigned full-time to the Alternate School as a member of its staff""); Russell v. State, 74 S.W.3d 887, 889 (Tex.Ct.App.2002) (search conducted by "a police officer assigned to the high school"); In the Matter of Josue T., 128 N.M. 56, 989 P.2d 431, 434 (1999) (search conducted by "a school resource officer ... employed full-time by the Roswell Police Department but had a permanent office at the high school, where he was assigned to full-time duty").